972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Bobby Carroll BECKLEY, Defendant-Appellant.
 No. 91-6177.
 United States Court of Appeals, Sixth Circuit.
 July 22, 1992.
 
 Before KENNEDY, DAVID A. NELSON and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant appeals his conviction and sentence for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. For the reasons set out below, we affirm defendant's conviction and sentencing.
 
 I.
 
 2
 On November 16, 1990, defendant Bobby Beckley went to Tubby's Bar, had several drinks, and was told by the bartenders to leave after he had a near scuffle with a patron. He left the bar. Beckley returned with a loaded sawed-off shotgun. He opened the barroom door and pointed the gun into the barroom with both hands on the gun. The barroom was crowded, and the patrons screamed. One bartender shoved Beckley out the door and closed it. Beckley then struggled with another bartender while she tried to close the back door. Beckley was arrested next to his car. The gun was found underneath the car, and a shell was found in his left front pocket.
 
 
 3
 Beckley was indicted in state court on charges of wanton endangerment and of being a first degree persistent felony offender. At the state court hearing, the state prosecutor noted that he had contacted federal authorities about pursuing a possible firearms charge. The prosecutor also sent the federal authorities his reports and witness statements. Beckley contends that this same prosecutor later encouraged Beckley's attorney to have Beckley hurry to enter a guilty plea in state court so he could raise a double jeopardy defense in federal court. Beckley's attorney admitted that he questioned whether a double jeopardy defense was "available to us at that time from my limited understanding of where we were." Beckley's attorney contacted federal officials and claims that a prosecutor at the U.S. Attorney's Office (he cannot identify who it was) told him that there was no pending federal investigation of Beckley.
 
 
 4
 On March 22, 1991, Beckley entered a guilty plea in state court to the wanton endangerment charge. On April 11, 1991, Beckley was indicted on federal charges of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2) and possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871, in connection with the same Tubby's Bar incident. On May 16, 1991, the government filed a notice that it would be seeking to treat Beckley as an "armed career criminal." Beckley moved to dismiss the indictment on double jeopardy and due process grounds and objected to the "armed career criminal" specification. The district court denied his motions.
 
 
 5
 Beckley pled guilty to the charges. He was sentenced to 300 months in prison as an armed career criminal. He now appeals his conviction and sentence.
 
 II.
 
 6
 Beckley first contends that his federal conviction, following the state conviction, constituted double jeopardy in violation of the Fifth Amendment. He also claims that the indictment should be dismissed because federal officials misled him about possible federal charges, and therefore the prosecution violated his due process rights. We affirm the district court's rulings that defendant's federal conviction following his state court conviction does not violate the Double Jeopardy Clause.
 
 
 7
 The Double Jeopardy Clause of the Constitution provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Supreme Court has fashioned a dual sovereignty rule, under which a defendant's act may be a crime under both state and federal law, and a defendant can be punished by each sovereign for the same act without violating the Double Jeopardy Clause. Abbate v. United States, 359 U.S. 187, 195-96, 79 S.Ct. 666, 671 (1959). However, a collusion exception to the dual sovereignty rule prohibits the state prosecution from being used merely as a cover for the federal prosecution. Bartkus v. Illinois, 359 U.S. 121, 122-24, 79 S.Ct. 676, 677-78 (1959). Cooperation and joint investigations between the state and federal prosecutors are permissible, so long as one prosecution is not a sham or a cover for the other. United States v. Patterson, 809 F.2d 244, 247 (5th Cir.1987); United States v. Aboumoussallem, 726 F.2d 906, 910 (2d Cir.1984).
 
 
 8
 Here, there was cooperation between state and federal authorities in that the state prosecutor contacted the U.S. Attorney's Office and sent that office his reports. However, there were clearly two investigations. The federal authorities decided on their own to seek an indictment and convicted the defendant based on evidence obtained through their investigation.
 
 
 9
 There is no evidence in the record indicating that state and federal officials misled Beckley. Even if the state prosecutor indicated to Beckley's attorney that Beckley would have a double jeopardy claim in federal court, the evidence shows that Beckley's attorney, James Pike, doubted that such a claim existed. There is no indication that Pike relayed this double jeopardy information to Beckley. Even if someone at the U.S. Attorney's Office did tell Pike that no federal investigation was pending against Beckley, this would not rise to the kind of collusion or sham that Bartkus foresaw. In addition, in the state plea agreement and at the state plea hearing, Beckley and his attorney did not indicate that prosecutors made any representations or promises to Beckley. Therefore, the federal prosecution did not violate the Double Jeopardy Clause.
 
 
 10
 Neither did the federal prosecution violate Beckley's due process rights to fundamental fairness. To violate due process, the federal authorities must have participated in the state plea bargaining or made a firm commitment not to prosecute the defendant in federal court. United States v. Paul, 853 F.2d 308, 311 (5th Cir.1988), cert. denied, 488 U.S. 1012, 109 S.Ct. 801 (1989). If a defendant's guilty plea "is based on his mistaken subjective belief that federal agents did not intend to prosecute him," there is no due process violation unless the impression was created or condoned by federal agents. Id. Here, the federal authorities were not involved in Beckley's state plea bargain. Federal officials also did not tell Beckley that they did not intend to prosecute him on federal charges. The most that may have been said to Attorney Pike in answer to his questions as to whether the United States Attorney's Office was involved in any investigation, whether any charges were pending, and whether the prosecutor knew what was going on regarding the Carroll County case was, "No, we are not involved, and I don't know anything about any Bobby Beckley case." In fact, Beckley's state plea bargain specifically indicated that the agreement only applied to the state charges. Therefore, Beckley's prosecution and plea of guilty in federal court were not fundamentally unfair and did not violate the Due Process Clause.
 
 III.
 
 11
 Beckley next argues that his federal indictment should be dismissed because it violated the Department of Justice's Petite policy. We find that Beckley has no standing to claim a Petite policy violation.
 
 
 12
 The Justice Department has had an established "Petite Policy" since 1959 that states that there should be no federal prosecution subsequent to a state prosecution for substantially the same acts unless an Assistant Attorney General approves such prosecution based on compelling federal interests.[1] See United States v. Renfro, 620 F.2d 569, 573 n. 2 (6th Cir 1980) (citing Petite v. United States, 361 U.S. 529, 80 S.Ct. 450 (1960)), cert. denied, 449 U.S. 902, 101 S.Ct. 274 (1980). The Petite policy "is not constitutionally mandated and confers no rights upon the accused." United States v. Frederick, 583 F.2d 273, 274 (6th Cir.1978), cert. denied, 444 U.S. 860, 100 S.Ct. 124 (1979). Only the government has standing to seek a dismissal of an indictment because of a violation of the Petite policy. Renfro, 620 F.2d at 574.
 
 
 13
 Therefore, Beckley has no standing to seek a dismissal based on the Petite policy. But, even if he did, there is no evidence that the policy was violated or that an exemption from the policy was not obtained.
 
 IV.
 
 14
 Beckley next argues that his 300-month sentence was improper because the firearms offenses are not "crimes of violence," and therefore he cannot be sentenced under the career offender provision referenced in the "armed career criminal" section of the Sentencing Guidelines. We find that Beckley's felon-in-possession conviction involved a crime of violence, and therefore the district court was correct in sentencing him using the career offender provision.
 
 
 15
 The two-count indictment charged Beckley with knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and with knowingly possessing an unregistered shotgun in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871. The indictment does not mention the incident in Tubby's Bar specifically. Defendant Beckley pled guilty to both counts.
 
 
 16
 To qualify as an armed career criminal under 18 U.S.C. § 924(e)(1), a defendant must have violated the felon in possession statute, 18 U.S.C. § 922(g), and have three previous convictions for a "violent felony or a serious drug offense, or both, committed on occasions different from one another." § 924(e)(1). Here, Beckley was convicted of being a felon in possession and had at least three previous convictions for violent felonies, viz., three 1978 burglaries.[2]
 
 
 17
 An armed career criminal is to be sentenced under Guideline § 4B1.4. See U.S.S.G. § 4B1.4(a); U.S.S.G. § 4B1.2, application note 2. The criminal history category for an armed career criminal ranges between IV and VI. U.S.S.G. § 4B1.4(c)(1)-(3). Beckley's criminal history category is VI because the firearm Beckley possessed was "of a type described in 26 U.S.C. § 5845(a)." U.S.S.G. § 4B1.4(c)(2).[3] The offense level for an armed career criminal is the greatest of the four listed choices in Guideline § 4B1.4(b). In this case, the highest offense level is derived from § 4B1.1, the career offender provision, if that provision is applicable to Beckley. § 4B1.1(b)(2). Therefore, to determine Beckley's offense level, we must examine whether Beckley qualifies as a career offender. For the reasons indicated below, we believe that he does.
 
 
 18
 Guideline § 4B1.1 defines a career offender:
 
 
 19
 A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.
 
 
 20
 U.S.S.G. § 4B1.1. Element one is met because Beckley was 35 at the time of the offense, and element three is met because Beckley's prior burglary convictions specifically qualify as "crimes of violence" under Guideline § 4B1.2(1).[4] Therefore, the only issue is whether, under element two, the offense of conviction of being a felon in possession is a felony that is a "crime of violence."
 
 
 21
 Guideline § 4B1.2, borrowing from the "violent felony" definition in 18 U.S.C. § 924(e)(2), defines a crime of violence as follows:
 
 
 22
 (1) The term "crime of violence" means any offense under federal or state law punishable by a term exceeding one year that
 
 
 23
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
 
 
 24
 (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
 
 
 25
 § 4B1.2 (emphasis added). Application note 2 of the commentary to Guideline § 4B1.2, which was in effect at the time of Beckley's sentencing, clarifies what the sentencing court should examine:
 
 
 26
 Other offenses are included where (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth in the count of which the defendant was convicted involved use of explosives or, by its nature, presented a serious potential risk of physical injury to another.
 
 
 27
 U.S.S.G. § 4B1.2, application note 2 (emphasis added).[5]
 
 
 28
 Here, Beckley's offense does not fit into subsection (i) of Guideline § 4B1.2 or the first subsection of subsection (ii). The felon in possession statute does not have as an element the use of physical force, and unlawful possession of a firearm by a felon is not one of the crimes specifically listed. However, we believe that Beckley's conduct falls under subsection (ii) of Guideline § 4B1.2. The language in Guideline § 4B1.2(ii) indicates that the focus should be on whether the offense "involves conduct" presenting a serious potential risk of physical injury. We find that Beckley's conduct presented "a serious potential risk of physical injury to another" because pointing a sawed off shotgun into a crowded barroom created the risk of serious injury to the patrons and employees inside that bar. § 4B1.2(1)(ii). Also, application note 2 requires us to examine whether the conduct "by its nature" presents a serious potential risk to others. A sawed off shotgun by its nature is an extremely dangerous weapon, and possession alone of such a loaded weapon in a crowded barroom could justify treatment as a crime of violence. Congress recognized the increased threat that a sawed off shotgun poses by imposing a greater punishment for these weapons under the firearm enhancement statute.[6]
 
 
 29
 Although we have never addressed whether being a felon in possession is a crime of violence,[7] numerous other courts have directly addressed this issue.[8] Several of these cases support our view that at the time of Beckley's sentencing, his underlying conduct constituted a "crime of violence." In several cases involving sentencings handed down prior to the 1991 amendment to the commentary to Guideline § 4B1.2, courts have held that on the particular facts of those cases, the underlying conduct of the felons in possession made the possession a "crime of violence." In United States v. Goodman, 914 F.2d 696, 699 (5th Cir.1990), abrogated, United States v. Fitzhugh, 954 F.2d 253 (5th Cir.1992), the Fifth Circuit held that it could look at all the facts disclosed by the record to see if a felon in possession was involved in a crime of violence. Id. It concluded that because the defendant was armed with a rifle and was heading back to the scene of the scuffle prepared to use it, this conduct was a "crime of violence." Id. See also United States v. John, 936 F.2d 764, 768 (3d Cir.1991) ("we already have interpreted § 4B1.2 as permitting a court to look through to the defendant's underlying conduct ..."); United States v. Chapple, 942 F.2d 439, 441 (7th Cir.1991) (possession plus some overt act needed to imply its use); United States v. Cornelius, 931 F.2d 490, 493 (8th Cir.1991) (looking at facts underlying possession to make crime-of-violence determination), appeal after remand, --- F.2d ----, 1992 WL 148194 (8th Cir. July 2, 1992). These courts did not merely look at the explicit words in the indictment or take a categorical approach to the issue, but focused on the underlying conduct of the felon in possession to determine whether a crime of violence occurred. Although we disagree with the decisions that have held that a defendant must fire the gun to be involved in a crime of violence, we agree with the analysis these courts have employed in looking beyond the indictment to the defendant's underlying conduct. See United States v. Leeper, --- F.2d ----, 1992 WL 97015 (8th Cir. May 22, 1992) (considering fact that defendant fired three shots to find that possession was a crime of violence); United States v. McNeal, 900 F.2d 119, 123 (7th Cir.1990) (felon in possession was crime of violence at least where evidence exists that gun was fired); United States v. Williams, 892 F.2d 296, 304 (3d Cir.1989), cert. denied, 110 S.Ct. 3221 (1990) (under the pre-1989 Guidelines, "possessing a gun while firing it ... is a crime of violence; possession without firing the weapon is not."). We agree with these courts and find that the Guidelines applicable to Beckley intended sentencing courts to look to the conduct behind the conviction, and not merely to the facts specifically described in the indictment.[9]
 
 
 30
 We acknowledge that the commentary to Guideline § 4B1.2 was amended effective November 1, 1991, a little more than a month after Beckley was sentenced. That amendment adds the words "expressly charged" to application note 2, which now reads, "Other offenses are included where ... (B) conduct set forth (i.e. expressly charged ) in the count of which the defendant was convicted ... by its nature, presented a serious potential risk of physical injury to another." Guideline § 4B1.2, application note 2. In addition, that amendment adds:
 
 
 31
 Under this section, the conduct of which the defendant was convicted is the focus of the inquiry.
 
 
 32
 The term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon. Where the instant offense is the unlawful possession of a firearm by a felon, the specific offense characteristics of § 2K2.1 ... provide an increase in offense level if the defendant has one or more prior felony convictions for a crime of violence or controlled substance offense; and, if the defendant is sentenced under the provisions of 18 U.S.C. § 924(e), § 4B1.4 (Armed Career Criminal) will apply.
 
 
 33
 U.S.S.G. § 4B1.2, application note 2.
 
 
 34
 However, these amendments to the commentary to the Guidelines were not issued by the Sentencing Commission until more than a month after Beckley was sentenced in September of 1991. We find that these commentary amendments are not applicable to Beckley.
 
 
 35
 We have held that ordinarily sentencing courts are to give commentary substantial weight in interpreting the Guidelines. See United States v. Carroll, 893 F.2d 1502, 1511 (6th Cir.1990) ("we recognize that the commentary accompanying the Sentencing Guidelines Manual is unusually probative of the Commission's intent on this issue."). In Carroll, we cited to Guideline § 1B1.7, which states
 
 
 36
 The Commentary that accompanies the guideline sections may serve a number of purposes. First, it may interpret the guideline or explain how it is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal. See 18 U.S.C. § 3742.
 
 
 37
 Id. at 1508. Section 3742, in turn, states that we may review a final sentence if it was imposed in violation of law or was imposed as a result of an incorrect application of the Guidelines. 18 U.S.C. § 3742.[10] Therefore, although this new commentary ordinarily would be "unusually probative" of the Commission's intent, we decline to apply the amendments here.[11] We do not believe that these amendments to commentary, which were not yet issued by the Commission and not yet available to the district court at the time of sentencing, render the sentence "in violation of law" or an "incorrect application of the Guidelines." Id. § 3742. See also 18 U.S.C. § 3553(a)(4) (applying Guidelines and commentary "that are in effect on the date the defendant is sentenced.").[12] The district court who looked at the Guidelines and commentary applicable at the time of Beckley's sentencing did not err in finding that this activity "involves conduct that presents a serious potential risk of injury to others." Guideline § 4B1.2.[13]
 
 
 38
 Accordingly, we find that the district court did not err in sentencing Beckley as an armed career criminal and using the career offender provision to determine his offense level. The district court correctly found that by applying the career offender provision, Beckley's offense level was 37,[14] minus two points for acceptance of responsibility. The 300-month sentence was at the low end of the Guideline range for a defendant with a criminal history category of VI and an offense level of 35.
 
 V.
 
 39
 For the reasons set out above, we AFFIRM defendant Beckley's conviction and sentence.
 
 
 
 [1]
 Specifically, the policy states:
 After a state prosecution there should be no federal trial for the same act or acts unless the reasons are compelling.... [N]o federal case should be tried when there has already been a state prosecution for substantially the same act or acts without the United States Attorney first submitting a recommendation to the appropriate Assistant Attorney General in the Department. No such recommendation should be approved by the Assistant Attorney General without having it first brought to my attention.
 United States v. Frederick, 538 F.2d 273, 274 (6th Cir.1978), cert. denied, 444 U.S. 860, 100 S.Ct. 124 (1979) (quoting Petite policy).
 
 
 [2]
 A "violent felony" means any crime punishable by imprisonment for a term exceeding one year that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, ..., or otherwise involves conduct that presents a serious potential risk of physical injury to another; ..." 18 U.S.C. § 924(e)(2)
 The three separate burglaries involving separate incidents can constitute three separate violent felonies, although they were adjudicated together. United States v. Hayes, 951 F.2d 707, 709 (6th Cir.1991), cert. denied, 112 S.Ct. 1694 (1992).
 
 
 [3]
 In § 5845 of Title 26, a firearm is defined as:
 The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; ...
 26 U.S.C. § 5845(a). Beckley was carrying a sawed off shotgun.
 
 
 [4]
 The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that--
 (ii) is burglary of a dwelling....
 U.S.S.G. § 4B1.2(1). See Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 2158-60 (1990) (statute must meet generic definition of burglary to constitute violent felony).
 
 
 [5]
 Prior to November 1, 1989, the commentary to § 4B1.2 read:
 Other offenses are covered only if the conduct for which the defendant was specifically convicted meets the above definition. For example, conviction for an escape accomplished by force or threat of injury would be covered; conviction for an escape by stealth would not be covered. Conviction for burglary of a dwelling would be covered; conviction for burglary of other structures would not be covered.
 U.S.S.G. § 4B1.2, application note 1. This language was replaced on November 1, 1989, by the language cited in the text above. On November 1, 1991, the commentary again changed, and the Commission specifically stated that unlawful possession of a firearm by a felon is not a "crime of violence." See infra text pp. 14-17 and accompanying notes for a discussion of the amendments to the commentary.
 
 
 [6]
 Section 924(c)(1) adds five years onto the punishment provided for a drug trafficking offense or a crime of violence for carrying a firearm in conjunction with either of these offenses. The enhanced penalty, however, is doubled to ten years if the firearm is a short-barreled rifle or short-barreled shotgun. 18 U.S.C. § 924(c)(1); U.S.S.G. § 2K2.4
 
 
 [7]
 Our decision, though, is supported by our holding in United States v. Maddalena, 893 F.2d 815 (6th Cir.1989). There, we addressed whether, under a prior version of Guideline § 4B1.2, an unarmed robbery constituted a "crime of violence." Id. at 819. We held that the district court was not limited to looking at the statute and the indictment to determine what occurred, but that it "has the discretion to consider evidence other than the statute in determining whether an offense is a 'crime of violence.' " Id. at 820. We concluded that in that case the unarmed robbery involved a substantial risk that physical force would be used against others. Id. Under Maddalena's reasoning, the sentencing court here did not err in looking at the circumstances underlying Beckley's firearm possession convictions
 
 
 [8]
 We acknowledge that numerous other decisions have grappled with this issue and arrived at a variety of results
 In several cases, the courts determined that being a felon in possession is per se not a crime of violence. United States v. Shano, 955 F.2d 291, 295 (5th Cir.1991) (possession of a firearm is not to be sentenced as a crime of violence), cert. denied, 112 S.Ct. 1520 (1992); United States v. Briggman, 931 F.2d 705, 710 (11th Cir.) (felon in possession offense is not a crime of violence), cert. denied, 112 S.Ct. 370 (1991). Several courts have held that being a felon in possession is per se a crime of violence. United States v. O'Neal, 937 F.2d 1369, 1375 (9th Cir.1990) (felon in possession by nature poses substantial risk); United States v. Stinson, 943 F.2d 1268, 1270-73 (11th Cir.1991) (felon in possession offense is categorically a crime of violence), rehearing denied, 957 F.2d 813, 814-15 (11th Cir.1992). Other courts have held that sentencing courts are only to look at the conduct described in the indictment to make the "crime of violence" determination. United States v. Fitzhugh, 954 F.2d 253, 254 (5th Cir.1992) (repudiating its prior holding in United States v. Goodman and finding that only facts in indictment can be considered); United States v. Leavitt, 925 F.2d 516, 517 (1st Cir.1991) (court is to look at description as charged in indictment); United States v. Johnson, 953 F.2d 110, 113-14 (4th Cir.1991) (court must look only to conduct in indictment); United States v. Coble, 756 F.Supp. 470, 473 (E.D.Wash 1991) (O'Neal is no longer good law under new amendments); United States v. Hernandez, 753 F.Supp. 1191, 1197 (S.D.N.Y.1990) (being a felon in possession is not a crime of violence), aff'd & remanded on other gds., 941 F.2d 133 (2d Cir.1991).
 
 
 [9]
 Several courts held that the commentary language "conduct set forth in the count of which defendant was convicted" indicates that courts are not to look beyond the conduct specifically described in and limited by the precise words in the indictment. See U.S.S.G. § 4B1.2, application note 2 (emphasis added). See also United States v. Fitzhugh, 954 F.2d 253, 254 (5th Cir.1992) (repudiating its prior holding in United States v. Goodman and finding that only facts in indictment can be considered); United States v. Leavitt, 925 F.2d 516, 517 (1st Cir.1991) (court is to look at description as charged in indictment); United States v. Johnson, 953 F.2d 110, 113-14 (4th Cir.1991) (court must look only to conduct in indictment). We disagree with using this approach in applying the Guidelines and commentary in effect at the time Beckley was sentenced
 
 
 [10]
 (a) Appeal by a defendant.--A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence--
 (1) was imposed in violation of law;
 (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
 (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, ...
 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
 18 U.S.C. § 3742.
 
 
 [11]
 In United States v. Sanchez, 928 F.2d 1450, 1459 (6th Cir.1991), another panel of this Court applied an amendment to the commentary to Guideline § 3C1.1 retroactively and remanded for resentencing in light of that amendment. However, Sanchez made no holding on when or if commentary amendments generally should be applied retroactively
 
 
 [12]
 The Commission has addressed retroactivity in another context in the commentary to Guideline § 1B1.10, which is the Policy Statement dealing with Retroactivity of Amended Guideline Range. It cites the legislative history of 28 U.S.C. § 994(u) (the statutory provision governing the Commission's reduction of terms of imprisonment for particular offenses):
 "It should be noted that the Committee does not expect that the Commission will recommend adjusting existing sentences under the provision when guidelines are simply refined in a way that might cause isolated instances of existing sentences falling above the old guidelines or when there is only a minor downward adjustment in the guidelines. The Committee does not believe the courts should be burdened with adjustments in these cases." S. Rep. 98-225, 98th Cong., 1st Sess. 180 (1983).
 U.S.S.G. § 1B.10, commentary.
 
 
 [13]
 We recognize that other courts of appeals have applied a different analysis in dealing with amendments to commentary. These courts have held that amendments to the commentary apply retroactively as long as they merely clarify, rather than substantively change, the commentary. See Early v. United States, 112 S.Ct. 330, 330-31 (1991) (dissenting from denial of writ of certiorari and citing to cases); United States v. Voss, 956 F.2d 1007, 1011 (10th Cir.1992) (citing majority of cases applying clarifying commentary); United States v. Howard, 923 F.2d 1500, 1504 (11th Cir.1991) (considering clarifying amendment to commentary); United States v. Rodriguez, 942 F.2d 899, 902 (5th Cir.1991) (clarifying amendment to commentary is relevant), cert. denied, 112 S.Ct. 990 (1992). Other courts, however, have not used the clarifying/substantive distinction in dealing with this issue, just as we do not apply that distinction in this case. See United States v. Cornelius, --- F.2d ---- n. 2, 1992 WL 148194 (8th Cir. July 2, 1992) (commentary amendment not applied retroactively to defendant); United States v. Dortch, 923 F.2d 629, 632 n. 2 (8th Cir.1991) (same); United States v. Watts, 940 F.2d 332, 333 (8th Cir.1991) (same). See also United States v. Stinson, 957 F.2d 813, 815 (11th Cir.1991) (amendment to commentary to § 4B1.2 not effective until Guideline is changed)
 
 
 [14]
 The offense level for a career offender is determined by the table set out in Guideline § 4B1.1. The offense levels set out in the table are dependent upon the statutory maximum for each offense. For an armed career criminal, the statutory minimum is 15 years and the statutory maximum is life. 18 U.S.C. § 924(e)(1). Under § 4B1.1, the offense level for an offense with a statutory maximum of life is 37. U.S.S.G. § 4B1.1