**UNITED STATES of America, Plaintiff,**

v.

**Sam SLOAN, Defendant.**

**No. IP 93–0050M–01.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 6, 1993.

---

Timothy Morrison, Asst. U.S. Atty., Office of U.S. Atty., Indianapolis, IN, for plaintiff.

Timothy O'Connor, Indianapolis, IN, for defendant.

### ENTRY AND ORDER DETERMINING MENTAL COMPETENCY AND ORDER OF DETENTION

FOSTER, United States Magistrate Judge.

### PROCEDURAL STATEMENT

This cause came before the Court for hearing on April 28, 1993 upon the defendant's return to this Court's jurisdiction following completion of a forensic report pursuant to this Court's order for determination of mental competency entered on March 3, 1993. Depending on the outcome of the hearing to determine mental competency, the Court intended to, and did, continue into a detention hearing. The Court now makes its findings and enters its Orders.

### DETERMINATION OF MENTAL COMPETENCY

During the probable cause hearing held on February 19, 1993, the Court committed the defendant, Sam C. Sloan, to the custody of the Attorney General for the purpose of an examination and evaluation to be conducted pursuant to Title 18, U.S.C. §§ 4241, 4242 and 4247. Pursuant to the Court's order Mr. Sloan was transported to the Federal Correctional Institution at Milan, Michigan for examination and evaluation. On April 20, 1993 the Warden of that institution, by letter,

notified the Court that the examination and evaluation of Mr. Sloan was concluded and enclosed a six-page written report of forensic evaluation ordered by the Court.

The Defendant appeared in person with his court appointed counsel, Mr. Timothy O'Connor; the Government was represented by Mr. Tim Morrison, Assistant U.S. Attorney, Special Agent Dwight Rapp, ATF, appeared as the agency representative; and Mr. Thomas Parker, U.S. Probation, also appeared. The Court took judicial notice of all prior pleadings and record of proceedings before the Court prior to the date of this proceeding. The Court marked the Warden's letter dated April 20, 1993 as Court's Exhibit 1 for April 28, 1993 and the six-page forensic report was marked as Court's Exhibit 2 for April 28, 1993. By those references the Court's Exhibits 1 and 2 for April 28, 1993 were admitted in evidence without objection by either the defendant or the United States.

The issue for determination is whether the defendant, Sam C. Sloan, was at the time of his first appearance and may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. The Court, after full review of the Court's prior pleadings and record of proceedings, the Warden's letter and the contents of the forensic report, requested whether the United States or the defendant had additional evidence to submit. Neither the United States nor the defendant submitted any additional evidence and both rested upon the submission of the record before the Court.

The Court, now on consideration of the submitted record finds by a preponderance of the evidence that the defendant is mentally competent to the extent that he is able to understand the nature and the consequences of the proceedings against him and to assist properly in his defense.

On March 3, 1993 the Court also ordered the examination and evaluation to determine whether the defendant was insane at the time of the alleged offenses charged in the complaint. The report additionally deduced that Mr. Sloan was sane at the time of the alleged offenses. Neither the finding of competency or of sanity herein shall, pursuant to Title 18, U.S.C. § 4241(f), prejudice the defendant in raising the issue of his sanity as a defense to the charged offenses. Likewise, the Court's findings regarding competency and sanity shall not be admissible as evidence in the trial, if any, for the offenses charged in the Complaint. Should an indictment be returned charging the defendant with offenses identical to, or anyway related with, those contained in the Complaint in this matter, the undersigned United States Magistrate Judge recommends to the District Judge upon whose docket and calendar that case is randomly drawn, the adoption of this Entry.

## DETENTION

The Court, having found the defendant competent as previously set forth in this Entry, proceeded to consider the issue of detention or release in accordance with Title 18, U.S.C. § 3141 et seq. For purposes of the detention hearing the Court restated that it was considering as the submitted record all pleadings, exhibits, entries, testimony, and papers contained in the Clerk's file and the Court's record. The Government then rested as did the defendant without the submission of any additional evidence or proffer. The defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and with possessing an unregistered firearm, namely a "sawed-off" shotgun, in violation of 26 U.S.C. § 5861(d).

The Bail Reform Act of 1984, Pub.L. 98–473, Title II, § 203(a), 98 Stat. 1976, as amended, 18 U.S.C. § 3141 et seq., makes pretrial detention available in six circumstances: (1) when the defendant is charged with a crime of violence, 18 U.S.C. § 3142(f)(1)(A); (2) when the defendant is charged with a crime for which the maximum sentence is life imprisonment or death, § 3142(f)(1)(B); (3) when the defendant is charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act (21 U.S.C. § 801 et seq.), the

Controlled Substances Import and Export Act (21 U.S.C. § 951 *et seq.*), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. § 1901 *et seq.*), § 3142(f)(1)(C); (4) when the defendant is charged with any felony and he has been convicted of at least two offenses listed above (§ 3142(f)(1)(A) through (C)) or at least two State or local offenses which would have constituted those offenses if federal jurisdiction existed, or a combination of these offenses, § 3142(f)(1)(D); (5) there is a serious risk that the defendant will flee, § 3142(f)(2)(A); or (6) there is a serious risk that the defendant will, or will attempt to, obstruct justice or threaten, injure, or intimidate a prospective witness or juror, § 3142(f)(2)(B). The United States moved for pretrial detention under the first and fifth circumstances (§ 3142(f)(1)(A) and (f)(2)(A)), asserting that the charged offenses are crimes of violence and there is a serious risk that the defendant will flee. For the reasons given below, I find that being a felon in possession of an unregistered sawed-off shotgun are crimes of violence and that there is a serious risk that the defendant will flee. I further find that pretrial detention is available in this case under § 3142(f)(1)(D) as well in that the defendant is charged with a felony and has a record of at least two prior State convictions for crimes of violence.[1]

During these proceedings, the Court orally reviewed the case law and made findings of facts and conclusions of law regarding the legal definition of a crime of violence as found in Title 18, U.S.C. §§ 16, 924(c)(3), and 3156(a)(4). The Court incorporates its oral statements as if set forth here in support of this finding.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. The Court has found that there is probable cause to believe that the defendant, Sam C. Sloan, possessed an unregistered sawed-off, 12 gauge shotgun after being con-

victed of felonies, in violation of Title 18, U.S.C. § 922(g) and Title 26, U.S.C. § 5861(d).

2. The prior State convictions which serve as the prerequisites for the 18 U.S.C. § 922(g) (felon in possession) complaint against the defendant are criminal recklessness and dealing in a sawed-off shotgun, both Class D felonies in Indiana. These convictions were entered in Marion County, Indiana on October 10, 1991.

3. The Court concludes that both of the charges against the defendant, *viz.* being a felon in possession of an unregistered sawed-off shotgun, are, under the facts of this case, crimes of violence.

4. A "crime of violence", for the purposes of § 3142, is defined as:

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4). Since neither the offense of being a felon in possession of a firearm nor the offense of being in possession of an unregistered firearm includes an element of physical force, these offenses may constitute crimes of violence only if, *by their nature*, they involve a "substantial risk that physical force against the person or property of another may be used." 18 U.S.C. § 3142(a)(4)(B).

In *United States v. Chapple*, 942 F.2d 439 (7th Cir.1991), the Seventh Circuit addressed the definition of a "crime of violence." The defendant in *Chapple* was charged under 18 U.S.C. § 922(g) for being a felon and having a loaded handgun tucked into the waistband of his trousers while riding in a taxi. The Court declined to follow decisions holding

---

1. The Pretrial Services Report lists the following relevant convictions against the defendant: (1) burglary and attempted burglary, Marion County, Indiana, March 13, 1986; (2) resisting law enforcement, Marion County, Indiana, March 8, 1991; (3) criminal recklessness (involving, in part, pointing a shotgun at an individual), Marion County, Indiana, October 10, 1991; and (4) intimidation (involving, in part, making death threats), Hendricks County, Indiana, March 27, 1992.

that possession alone constitutes a crime ˙of violence and refused to extend the definition beyond "the general rule" that "possession of. a weapon *plus* some overt action implying or indicating its use is a crime of violence." *Id.* at 441. Even given *Chapple's* broad interpretation of "overt action",[2] there is no evidence or allegation in this case that the defendant made any overt act implying. or indicating use of the subject sawed-off shotgun.[3] I conclude, however, that *Chapple* is distinguishable from this case.

a. The Court in *Chapple* was interpreting the definition of a "crime of violence" provided in Sentencing Guideline 4B1.2, not the definition in 18 U.S.C. § 3156(a)(4) which applies in the pretrial release/detention context. The definitions are not identical and the contexts are significantly different. *Chapple*, therefore, does not directly control the present determination.

b. There are convincing reasons for not following *Chapple's* approach in the pretrial release/detention context. At the time *Chapple* was decided, Sentencing Guideline 4B1.2 defined a crime of violence in these terms:

The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—

2. "... *any* overt action by a defendant pointing a weapon, drawing a weapon, openly displaying a weapon, brandishing a weapon, holding a weapon, gesturing towards a weapon, or any act other than mere passive possession, would cross that line and present a sufficient potential for physical injury to constitute a crime of violence...." *Chapple*, 942 F.2d at 442.

3. According to the affidavit attached to the Complaint and the testimony at the hearing, the weapon was discovered and seized from underneath a seat cushion of a couch in the defendant's residence while the defendant was absent.

4. This is also the current text of § 4B1.2. United States Sentencing Commission, *Guidelines Manual*, § 4B1.2 (Nov. 1992).

5. *See also United States v. Doe*, 960 F.2d 221 (1st Cir.1992) (holding, for the purposes of 18 U.S.C. § 924(e), that being a felon in possession of a firearm is not a "violent felony" as defined in 18 U.S.C. § 924(e)(2)(B)).

6. The Commentary to § 4B1.2 was amended effective November 1, 1991 to include the state-

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

United States Sentencing Commission, *Guidelines Manual*, § 4B1.2 (Nov. 1990).[4] Some circuit courts of appeals have, like . *Chapple*, interpreted § 4B1.2's definition of crimes of violence to exclude violations of 18 U.S.C. § 922(g), at least where no overt acts are present, *see*, *United States v. Sahakian*, 965 F.2d 740, 742 (9th Cir.1992); *United States v. Fitzhugh*, 954 F.2d 253 (5th Cir. 1992); *United States v. Johnson*, 953 F.2d 110 (4th Cir.1991); *United States v. Walker*, 930 F.2d 789 (10th Cir.1991); *United States v. Williams*, 892 F.2d 296 (3rd Cir.1989), *cert. denied* 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990),[5] while other circuits have held that being a felon in possession of. a firearm, without more, constitutes a crime of violence under § 4B1.2, *see*, *United States v. O'Neal*, 937 F.2d 1369, 1372 (9th Cir.1990), *abrogated by Sahakian, supra*; *United States v. Stinson*, 943 F.2d 1268 (11th Cir. 1991), *on denial of rehearing*, 957 F.2d 813. (11th Cir.1992), *judgment vacated*, — U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).[6]

ment that "[t]he term 'crime of violence' does not include the offense of unlawful possession of a firearm by a felon," United States Sentencing Commission, *Guidelines Manual*, § 4B1.2, Application Note 2 (Nov. 1991). United States Sentencing Commission, *Guidelines Manual*, Appendix C, amendment no. 433 (1992). Before this 1991 amendment, there was a split among the Circuits as to whether being a felon in possession was *per se* a crime of violence under § 4B1.2. Most post-amendment decisions, however, hold that a violation of § 922(g) is not a crime of violence, relying primarily or exclusively on the amendment and often overruling contrary preamendment decisions. *See Sahakian*, 965 F.2d at 742; *Fitzhugh*, 954 F.2d at 255.

Following the Seventh Circuit's directions to treat the Sentencing Commission's commentaries as legislative history, *United States v. Pinto*, 875 F.2d 143, 144 (7th Cir.1989) ("Conscious of the limits of legislative history, we exercise caution in leaning on what may not be an authentic guide to meaning.... Like legislative history, the notes are not formally binding, and we would follow the text over the notes in the event·of

Although § 4B1.2's definition of a crime of violence is very. similar to § 3156(a)(4)'s, the significantly different context of a pretrial detention determination from a sentencing enhancement context calls for interpreting § 3156(a)(4) in accord with the different interests and purposes intended to be served by the release/detention determination. *Cf. United States v. Doe,* 960 F.2d 221, 225–26 (1st Cir.1992) (refusing to apply § 922(g)'s legislative judgment that felons in possession of firearms pose serious threats to public safety to § 924(e)(2)(B)'s definition of a violent felony because of the different criminalization and sentence enhancement contexts). The Eighth Circuit reviewed the purposes and intent of the Bail Reform Act shortly after its passage: ·

The Bail Reform Act of 1984 . . . was a legislative response to growing public concern over increased crime and the perceived connection between crime and defendants released on bail. The legislative history explains that the 1984 Act:

reflect[s] the Committee's determination that Federal bail laws must address the alarming problem of crimes committed by persons on release and must give the courts adequate authority to make release decisions that give appropriate rec-

ognition to the danger a person may pose to others if released. The adoption of these changes marks a significant departure from the basic philosophy of the [Superseded Bail Reform Act of 1966], which is that the sole purpose of bail laws must be to assure the appearance of the defendant at judicial proceedings.

S.Rep. No. 225, 98th Cong., 1st Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Ad. News 3182 at 3185–3186.

\*　　\*　　\*　　\*　　\*　　\*

. . . Congress was demonstrating its concern about "a small but identifiable group of particularly dangerous defendants as to whom neither the imposton [sic] of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S.Rep. No. 225, 98th Cong., 1st Sess. 6–7, *reprinted in* 1984 Code Cong. & Ad.News at 3189.

*United States v. Orta,* 760 F.2d 887, 890 (8th Cir.1985). As discussed below, Congress has declared that because felons in possession of firearms are a threat to the safety of society, they are permanently barred from possession. 18 U.S.C. § 922(g). A felon, therefore, who possesses a firearm in direct violation of

conflict. . . ."); *United States v. White,* 888 F.2d 490, 497 (7th Cir.1989) ("The Sentencing Commission's application notes are contemporaneous explanations of the Guidelines by their authors, entitled to substantial weight"); *see also* Guideline 1B1.7 ("the courts will treat the commentary much like legislative history or other legal material that helps determine the intent of a drafter"), I had found persuasive the Eleventh Circuit's decision not to accord amendment 433 much ·weight because, *inter alia,* far from being a "contemporaneous explanation of the Guideline[ ] by [its] authors," as envisioned in *White,* the 1991 amendment was a four-years after-the-fact creation of "administrative history" which was most likely added in response to contrary judicial interpretations. *United States v. Stinson,* 957 F.2d 813, 814–15 (11th Cir.1992). As with the standards governing reliance on legislative history, such *post hoc* statements, and, consequently, the judicial decisions relying on them, would be entitled to little, if any, weight, especially when compared to the substantial body of pre-amendment judicial precedent to the contrary. However, three days ago, while this Entry was in process, the Supreme Court handed down its decision in the appeal of *Stinson. United States v. Stinson,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598

(1993). Rejecting analogies of the Sentencing Commission's commentaries to legislative history or agency construction of federal statutes, the Court treated them as agency interpretations of its own legislative rules which are binding on the courts ·unless contrary to the Constitution or a federal statute, or plainly erroneous or inconsistent with the regulation. *Id.* The Court found that none of these exceptions existed and held that courts are bound by the Commission's comment that unlawful possession of a firearm by a felon is not a crime of violence under. § 4B1.2. Still, to· the extent that opinions concluding that § 4B1.2's definition of a crime of violence does not include violations of § 922(g) are determined by the binding force of the Sentencing Commission's interpretations, and not by the courts' independent judgments derived from the Guideline's language, Congress' intentions, or the context of decision, they carry no more persuasive force than the body of pre-amendment cases to the contrary.

The 1991 amendment does not affect the persuasive weight, if any, to be given *Chapple's* holding, however, as the case was decided before the amendment and followed consistent circuit *dicta.*

this ban commits a continuing threatening act against society and has already demonstrated the inability of specific legal proscriptions to prevent him from breaking the law. Certainly such persons would be one of the few types of defendants targeted by the Act whose danger at least warrants *consideration* for detention under § 3142(f)(1)(A).

The interpretation of a crime of violence must also recognize the different environment in which the release/detention decision is made when compared to the sentencing environment. Sentencing follows conviction. At that point, there has been full investigation, trial, and determination of the facts; the defendant is in custody [7] and will not be released into the community until after serving a sentence; and there has been an opportunity to extensively investigate all facts relevant to sentencing factors. In the pretrial detention context, by contrast, the Court must decide whether to release a potentially dangerous defendant at the earliest stage of judicial proceedings. Because of the short deadlines imposed by law, the information

available to a court relevant to the factors to be considered on detention, 18 U.S.C. § 3142(g), is usually unavoidably uncertain and incomplete. The decision facing a court is not whether to merely enhance a sentence a defendant will already serve, but whether to release him from custody into the community. In short, while the safety of the community and prospective witnesses or jurors are more at risk in a pretrial release determination, the body of information informing that determination is less reliable.[8] Given the purpose of the Bail Reform Act to identify potentially dangerous defendants who should be detained pending trial for the safety of the community, witnesses, and jurors, and given the unavoidable constraints under which courts must make that determination, I conclude that § 3156(a)(4)'s definition of a crime of violence has a broader scope than Guideline 4B1.2's definition. For this reason, *Chapple* and similar cases interpreting § 4B1.2 are not persuasive in this case.[9]

c. Finally, a sawed-off shotgun presents a greater safety concern than the handgun

---

**7.** While convicted defendants may be on release awaiting sentencing, it is more than likely that a defendant convicted of any of the offenses listed in 18 U.S.C. § 3142(f)(1) or presenting a serious risk of flight or danger under § 3142(f)(2) (*i.e.*, those circumstances in which pretrial detention is available) is in custody pending sentencing.

**8.** The differences between Guideline 4B1.2's and § 3156(a)(4)'s definitions of crime of violence support giving a broader interpretation of crime of violence in the pretrial detention context. Guideline 4B1.2's definition includes only felonies which have as an element, the use, attempted use, or threatened use, of physical force, § 4B1.2(1)(i), whereas § 3156(a)(4) includes any offenses, including misdemeanors, which involve *the actual, attempted, or threatened use of physical force*, § 3156(a)(4)(A), such as the present defendant's March 27, 1992 conviction for "Intimidation" which, according to the Pretrial Services Report, was reduced to a Class A misdemeanor and involved personal and explicit threats to kill his girlfriend's mother. Secondly, while the Guideline definition only includes those offenses that involve physical force or injury against "the person of another", the Bail Reform Act definition of a crime of violence encompasses violent offenses that involve physical force against "the person *or property* of another." Further, the Guideline lists burglary "of a dwelling" as a crime of violence, while the Bail Reform Act's definition would presumably include a burglary of any building or structure. *See, Taylor v. United States*, 495 U.S. 575, 590–99, 110

S.Ct. 2143, 2154–58, 109 L.Ed.2d 607 (1990) (interpreting 18 U.S.C. § 924(e)'s definition of violent felonies). 18 U.S.C. § 924(e)(2)(B)'s definition of a "violent felony" is identical to the Guideline 4B1.2's definition of a "crime of violence" except for the addition of the words "of a dwelling" after "burglary." Thus, even by language, § 3156(a)(4) is a broader standard than § 4B1.2, encompassing greater varieties of potentially dangerous conduct, and it is reasonable to assume that this is so because the Bail Reform Act recognizes the greater sensitivity and difficulty of the release/detention determination.

**9.** A crime of violence, or violent felony, is defined in four places in the relevant law, 18 U.S.C. §§ 16, 924(e), 3156(a)(4); Sentencing Guideline 4B1.2, but follow two basic versions: the broader (§ 16 and § 3156(a)(4)) and the narrower (§ 924(e) and § 4B1.2). These versions are distinguished not only by the differences in language as indicated in note 8, but by the purposes for which they are employed. As originally enacted, Guideline 4B1.2 incorporated § 16's broader definition but was later amended to include its own definition borrowed from the narrower § 924(e), another "sentence enhancement" provision. United States Sentencing Commission, *Guidelines Manual*, Appendix C, amendment no. 268, effective November 1, 1991 (1992); *cf. United States v. Camargo*, 908 F.2d 179, 178 n. 4 (7th Cir.1990) (incorrectly suggesting that the amendment merely added the language of § 16 to the Guideline).

which was at issue in *Chapple*. The possession of a sawed-off shotgun is a crime of violence because the alteration of a shotgun from its original manufactured length by reducing either the barrel or stock or both to the point where the overall length of the weapon to under a total length of 26 inches or if the length of the barrel alone is under 18 inches, renders the weapon illegal if not properly registered pursuant to federal law. Such an illegal alteration not only renders the weapon readily concealable, but also extremely increases its volatility because it changes the gun's basic ballistic characteristics to make it more lethal. In other words the Court, based upon the congressional history of the firearms acts, evidence in many cases involving the carrying or use of illegal sawed-off shotguns in crimes of violence that have come before this Court, including evidence of the effect of firing a sawed-off shotgun, *e.g.*, a wider pattern of effect, carry but one connotation: sawed-off shotgun wounds will almost always prove fatal and unless such firearms are manufactured and possessed in accordance with law are generally found in the possession of individuals who are either intending to commit or have committed crimes of violence or offenses related to controlled substances.[10]

For these reasons, I conclude that *Chapple*'s decision that simple possession of a firearm by a felon is not a crime of violence under Guideline 4B1.2 does not control our determination under § 3156(a)(4).

5. Cases on-point, applying § 3156(a)(4), hold that a violation of 18 U.S.C. § 922(g) constitutes a crime of violence. *See, e.g., United States v. Jones*, 651 F.Supp. 1309 (E.D.Mich.1987), *reversed on other grounds*, 846 F.2d 358 (6th Cir.1988); *United States v. Phillips*, 732 F.Supp. 255, 262–63 (D.Mass.

1990); *United States v. Johnson*, 704 F.Supp. 1398 (E.D.Mich.1988). The reasoning in *Phillips* is persuasive:

> Such possession by a felon is, by its nature, a crime of violence for several reasons. A felon is more likely to know that such possession is illegal and is more likely to be possessing a firearm with willful disregard for the legal obligations imposed upon him as a convicted felon. This also makes it more likely that he will commit another crime, and that he will do so with a firearm in his possession. Also possession of a firearm is an on-going offense, and may lead to the use of the firearm. *See Johnson*, 704 F.Supp. at 1401; *Jones*, 651 F.Supp. at 1310.

> Categorizing possession of a firearm by a felon as a crime of violence is consistent with Congress' manifested intention in passing Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, which included the predecessor to section 922(g). Congress prohibited the possession of firearms by felons because it believed that possession of a firearm is particularly dangerous when it is by a convicted felon. As Senator Long, the sponsor of Title VII, stated, felons, among others,

>> have demonstrated that they are dangerous, or that they may become dangerous. Stated simply, they may not be trusted to possess a firearm without becoming a threat to society.

> Remarks of Senator Long, *quoted in United States v. Bass*, 404 U.S. 336, 354–55, 92 S.Ct. 515, 526, 30 L.Ed.2d 488 (1971) (Blackmun, J., dissenting) (quoting from 114 Cong.Rec. 14,773–14,774 (1968)....

*Phillips*, 732 F.Supp. at 263.[11] Furthermore, as discussed above, the risks involved in a

---

**10.** *See United States v. Beckley*, No. 91–6177, 1992 WL 172127, *4, 1992 U.S.App. LEXIS 17473, *14–15 (ordered unpublished, reported as table case at 972 F.2d 349) (6th Cir. July 22, 1992), *petition for cert. filed*, No. 92–6838 (December 7, 1992) ("A sawed off shotgun by its nature is an extremely dangerous weapon, and possession alone of such a loaded weapon in a crowded barroom could justify treatment as a crime of violence. Congress recognized the increased threat that a sawed off shotgun poses by imposing a greater punishment for these weapons under the firearm enhancement statute [18

U.S.C. § 924(c)(1)].'"); *United States v. Mobley*, 956 F.2d 450, 453–54 (3rd Cir.1992) ("Altered firearms, for example sawed-off shotguns, 'have few legitimate uses,' U.S.S.G. § 2K2.1, commentary, and have most probably been altered to conceal or magnify their deadly potential.").

**11.** *See also Barrett v. United States*, 423 U.S. 212, 96 S.Ct. 498, 502, 46 L.Ed.2d 450 (1976) ("The very structure of the Gun Control Act [including § 922(g)] demonstrates that Congress did not intend merely to restrict interstate sales but sought broadly to keep firearms away from per-

pretrial release/detention decision warrant application of a broader standard than in the sentencing context.

6. Possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) also constitutes an independent crime of violence as defined in 18 U.S.C. § 3156(a)(4). *United States v. Dunn*, 946 F.2d 615, 621 (9th Cir. 1991), *cert. denied* —— U.S. ——, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991). *Dunn* relied on the same concerns expressed above about the nature of such weapons:

> Not all firearms must be registered under 26 U.S.C. § 5861(d). Only those firearms must be registered that Congress has found to be inherently dangerous and generally lacking usefulness, except for violent and criminal purposes, such as sawed-off shotguns and hand grenades. 26 U.S.C. § 5845. The district court in *United States v. Johnson*, 704 F.Supp. 1398, reasoned that a felon in possession of a firearm, by its nature, involves a substantial risk of improper physical force under § 16(b) partly because of the blatant disregard for law displayed by an already-convicted criminal. 704 F.Supp. at 1401 (citing *United States v. Jones*, 651 F.Supp. 1309 (E.D.Mich.1987), *rev'd on other grounds*, 846 F.2d 358 (6th Cir.1988)). The court's reasoning also applies to the crime of possession of an unregistered firearm. The possession of an unregistered firearm of the kind defined in § 5845, even if by a non-felon, involves a similarly blatant disregard for law and a substantial risk of improper physical force. An individual who keeps a firearm of that kind for lawful purposes will recognize the need to register the weapon as evidence of lawful intent.

sons Congress classified as potentially irresponsible and dangerous. These persons are comprehensively barred from acquiring firearms by any means.").

**12.** The court in *Dunn* was interpreting 18 U.S.C. § 16's definition of a crime of violence which is identical to § 3156(a)(4)'s. Although it was doing so for sentence enhancement purposes under Guideline 4B1.1 (before the November 1, 1989 amendment to Guideline 4B1.2 incorporating 18 U.S.C. § 924(e)'s definition of crime of violence), I find its reasoning persuasive.

*Dunn*, 946 F.2d at 621.[12] *See also United States v. Kruszewski*, Magistrate No. 91-0031P, 1991 WL 268684, *1–2, 1991 U.S.Dist. LEXIS 17986, *2–3 (N.D.Ind., December 10, 1991) (Bail Reform Act) (the offenses of making unregistered firearms in violation of 26 U.S.C. §§ 5822, 5861(f) and 5871 "are so inherently dangerous that they constitute a crime of violence under [§ 3156(a)(4)(B) ]."); *United States v. Spires*, 755 F.Supp. 890, 892 (C.D.Calif.1991) (Bail Reform Act) ("Congress believed these particular weapons, as opposed to firearms in general, are extremely dangerous and serve virtually no purpose other than furtherance of illegal activity."); *United States v. Aiken*, 775 F.Supp. 855 (D.Md.1991) (Bail Reform Act).

7. The classification of the charges against the defendant as crimes of violence entitles the United States to a detention hearing, § 3142(f)(1)(A), and constitutes one of the factors the Court must take into account in making the detention determination, § 3142(g)(1).[13]

8. Pursuant to Title 18, U.S.C. § 3142(e), the judicial officer must determine whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community in deciding whether to grant the government's Motion for Detention. With respect to the risk of flight issue, the United States bears the burden of proof by a preponderance of the evidence. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir.1985); *United States v. Himler*, 797 F.2d 156 (3rd Cir.1986); *United States v. Leibowitz*, 652 F.Supp. 591 (N.D.Ind.1987). With respect to risk to the safety of any other person or the community,

**13.** Although the Bail Reform Act creates a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the defendant or the safety of the community when there is probable cause to believe that the defendant used or carried a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 3142(e), 924(c), the United States did not charge a violation of § 924(c) or move for recognition of the presumption on the basis that a violation of § 922(g) is a crime of violence. Such an effect would probably raise the question of impermissible "pyramiding" of offenses.

however, the United States must prove its allegations by clear and convincing evidence. Title 18, U.S.C. § 3142(f); *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *United States v. Knight*, 636 F.Supp. 1462 (S.D.Fla.1986). Detention can be based on a showing of either dangerousness or risk of flight; only one is required. *Portes*, 786 F.2d at 765. Clear and convincing evidence is something more than proof by a preponderance of the evidence but less than proof beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). The standard is "reasonable assurance"; the Court cannot order detention because there are no conditions which would *guarantee* the defendant's appearance and persons' safety. *United States v. Orta*, 760 F.2d 887 (8th Cir.1985).

 9. The weight of the evidence against Sloan, 18 U.S.C. § 3142(g)(2), is clear and convincing as the Court previously found in finding probable cause at the preliminary hearing on February 19, 1993. Sloan used Ms. Badour, the lady who he lived with, as the instrument to purchase the 12-gauge shotgun and shotgun shells in his presence and which were found at their residence on February 3, 1993, then modified to an overall length of 19 inches and a barrel length of 12 inches. Ms. Badour told Marion County deputy sheriffs, whom she had summoned to their residence that Sloan had struck her the night before and kept a sawed-off shotgun in the apartment. The above-described shotgun was found underneath a seat cushion on the couch and 34 shotgun shells were found in another room in the apartment.

 10. Factoring Sloan's history with the Court's findings as to the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, history relating to drug or alcohol abuse, criminal history and record concerning his appearance at prior court proceedings, 18 U.S.C. § 3142(g)(3), argues for detention. He evidences a long history of multiple drug abuse, alcohol, LSD, marijuana and cocaine. Even though only 24 years of age, he carries with him not only juvenile confinement, but convictions for theft (twice in 1985), attempted burglary, probation violation, resisting law enforcement, criminal recklessness, dealing in sawed-off shotgun, two counts of check deception, and intimidation, he has had no steady employment and his family relationship is severely strained because of his multiple substance abuse and exhibited volatile antisocial behavioral patterns.

 11. In considering the nature and seriousness of the danger to any person or the community that his release would pose, 18 U.S.C. § 3142(g)(4), the Court incorporates Court's Exhibit 2 for April 28, 1993 and the pretrial services report which in short reflects that he is a danger to his family, any witness and suffers with at least borderline sociopathic personality disorder. Based on the foregoing the Court concludes that the Government has shown by a preponderance of evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and has shown by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. In fact, it is the Court's conclusion that the level of proof is clear and convincing not only as to that factor but also that he is a risk of flight as well.

### ORDER

Therefore, the defendant is ordered committed to the custody of the Attorney General or his designated representatives for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; the defendant shall be afforded a reasonable opportunity for private consultation with defense counsel; upon order of a Court of the United States or on request of an attorney for the government, the person in charge of the correction facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connections with a Court proceeding.

**IT IS SO ORDERED.**