**UNITED STATES of America, Plaintiff,**

v.

**Kenneth CAMPBELL, Defendant.**

**No. 98–CR–6084L.**

United States District Court,
W.D. New York.

Nov. 20, 1998.

Joel L. Violanti, U.S. Attorney's Office, Buffalo, NY, for U.S.

Donald M. Thompson, Rochester, NY, for Kenneth Campbell.

## DECISION AND ORDER

LARIMER, Chief Judge.

Defendant, Kenneth Campbell ("Campbell"), was indicted on November 12, 1998, in a two-count indictment. His brother, Roderick Campbell, is also named in the indictment. At defendant's first appearance, the Government moved for detention on two separate grounds: first, under 18 U.S.C. § 3142(f)(1)(A), on the grounds that he was charged with a "crime of violence" as defined by 18 U.S.C. § 3156(a)(4); and under 18 U.S.C. § 3142(f)(2)(A), because he poses a serious risk of flight.

The Court conducted a detention hearing on November 17, 1998. Both the Government and the defendant proceeded by way of proffer and there was extensive argument on the law and facts.

At the conclusion of the hearing, the Court announced from the bench its decision to grant the Government's motion and ordered defendant detained pursuant to § 3142(e), there being no condition or combination of conditions that would assure the appearance of Campbell and assure the safety of the community. The Court stated orally its reasons for ordering detention on both grounds, and I specifically incorporate those findings here although I do intend to set forth now in writing my reasons for detention.

### A. Crime of Violence

The first issue relates to whether the Court has jurisdiction to entertain the Government's motion for detention under § 3142(f)(1)(A) upon an indictment charging the illegal possession of a firearm by a felon under 18 U.S.C. § 922(g)(1). On this aspect of the Government's motion, the Court must determine whether it can entertain the Government's motion for detention. If the crime at issue is not a "crime of violence" then the Government has no basis to move for, and I have no authority to grant, detention in such a circumstance.

When the Government has moved to detain a defendant, the district court must undertake a two-step inquiry. The court must first determine by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in § 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice. If the court finds that either of these conditions exists, the court must determine whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the

defendant's appearance at trial. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir.1988).

Under the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.*, the court is required to hold a detention hearing upon the Government's motion in any case that involves a "crime of violence ..." 18 U.S.C. § 3142(f)(1)(A). "Crime of violence" is defined in 18 U.S.C. § 3156(a)(4) as

(A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or

(C) any felony under chapter 109A [sexual abuse] or chapter 110 [sexual abuse and other exploitation of children] ...

The simple possession of a firearm by a felon, without more, does not fall within subsections (A) or (C) of this section. The issue, then, is whether it falls within subsection (B), *i.e.*, whether by its nature it "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

■ The courts have been divided over whether a violation of § 922(g)(1) constitutes a crime of violence for purposes of § 3142(f)(1)(A). *See United States v. Carter*, 996 F.Supp. 260, 263 (W.D.N.Y.1998) (collecting cases). Before undertaking an analysis of this issue, however, I must decide which of two approaches to use: the "categorical" approach, or the "case-by-case" approach. Under the categorical approach, the court looks only to the intrinsic nature of the offense itself as it is defined by statute, and does not consider any of the specific facts surrounding the alleged offense. *See, e.g., id.* 996 F.Supp. at 262; *United States v. Gloster*, 969 F.Supp. 92, 94 (D.D.C.1997). In contrast, under the case-by-case, or "fact specific" approach, the court may consider the actual conduct of the defendant and the circumstances under which the alleged offense was committed in determining whether there was a substantial

risk of physical harm. *See, e.g., United States v. Epps*, 987 F.Supp. 22, 24 (D.D.C. 1997).

As stated by Magistrate Judge Feldman of this district in *Carter*, which involved alleged unlawful transportation of firearms in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(b), most courts favor the categorical approach. 996 F.Supp. at 262 (collecting cases). I too find the categorical approach preferable. Treating all defendants charged with a certain offense in the same manner avoids the risk of ad hoc justice or arbitrary distinctions. *Carter*, 996 F.Supp. at 262; *United States v. Johnson*, 704 F.Supp. 1398, 1400 (E.D.Mich.1988).

Moreover, this method is consistent with the statutory scheme. For one thing, § 3156(a)(4) refers to "the *element[s]* of the offense" and whether the offense "by its nature" involves a risk of physical force. Those terms suggest that the court should look to the statutory definition of the offense rather than the particular facts of the case. *United States v. Hardon*, 6 F.Supp.2d 673, 674 (W.D.Mich.), *rev'd on other grounds*, 149 F.3d 1185 (table), 1998 WL 320945 (6th Cir. 1998).

The categorical approach is consistent with the statutory scheme in another way as well. If the risk of violence is inherent in the offense charged, § 3142(f) requires the court to hold a hearing to determine whether the defendant should be detained. It is at that juncture that the court is to consider the facts of the case as they bear upon the factors set forth in § 3142(g). *Gloster*, 969 F.Supp. at 95; *United States v. Washington*, 907 F.Supp. 476, 484–85 (D.D.C.1995).

■ Applying the categorical approach here, I find more persuasive the reasoning of those courts that have concluded that a violation of § 922(g)(1) is a crime of violence for purposes of the Bail Reform Act. The Second Circuit has not addressed this issue, which appears to be one of first impression in this circuit. A number of district courts from other circuits, however, have found that a felon-in-possession offense is a crime of violence as defined in § 3156(a)(4). *See, e.g., United States v. Floyd*, 11 F.Supp.2d 39, 40

(D.D.C.1998), *aff'd*, —— F.3d ——, 1998 WL 700158 (D.C.Cir.1998) (per curiam; unreported decision); *United States v. Butler*, 165 F.R.D. 68, 71–72 (N.D.Ohio 1996); *Washington*, 907 F.Supp. at 485; *United States v. Sloan*, 820 F.Supp. 1133, 1139 (S.D.Ind.1993); *United States v. Aiken*, 775 F.Supp. 855, 857 (D.Md.1991); *United States v. Phillips*, 732 F.Supp. 255, 263 (D.Mass.1990); *Johnson*, 704 F.Supp. at 1403; *United States v. Jones*, 651 F.Supp. 1309, 1310 (E.D.Mich.1987).

It appears that only two courts of appeals have addressed this precise issue at this point, and both did so in unreported decisions, which, under the rules of those circuits, are not to be cited as precedent. In *Floyd*, —— F.3d ——, 1998 WL 700158, the Court of Appeals for the District of Columbia Circuit stated that the district court had "properly determined that possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) is a crime of violence as that term is used in the Bail Reform Act, 18 U.S.C. § 3156(a)(4)(B)." In *Hardon*, however, the Court of Appeals for the Sixth Circuit reversed a district court decision, *Hardon*, 6 F.Supp.2d 673, in which the court had held that a § 922(g)(1) violation is a crime of violence. *Hardon*, 149 F.3d 1185 (table), 1998 WL 320945. Without elaboration, the Sixth Circuit stated that "[p]ossession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1), by their [sic] nature, do not involve such a risk [that physical force may be used during the commission of the offense]." *Id.*, 149 F.3d 1185, 1998 WL 320945 *1 (citing *Gloster*, 969 F.Supp. at 95). In addition, several district courts have ruled that a felon-in-possession offense is not a crime of violence for purposes of the Bail Reform Act. *See, e.g., Gloster*, 969 F.Supp. at 95; *United States v. Powell*, 813 F.Supp. 903, 908 (D.Mass.1992); *United States v. Whitford*, No. 92–73–J, 1992 WL 188815 *4 (D.Mass.1992).

As stated, I concur with the reasoning of those courts that have reached the conclusion that a § 922(g)(1) offense is inherently a crime of violence as that term is defined in § 3156(a)(4)(A). Although simple possession of a firearm may not be violent in a literal sense, the court must look to the statutory definition of "crime of violence." The statute does not require actual violence in the commonly understood sense of that word. Instead, it requires only that the offense be a felony that, "by its nature, involves a *substantial risk* that physical force" may be used. 18 U.S.C. § 3156(a)(4)(B) (emphasis added). For a number of reasons, I find that the unlawful possession of a firearm by a felon inherently poses such a risk.

First, this conclusion is consonant with Congress's intent, for "[t]he history of the firearm laws reveals the strong congressional conviction that an armed felon poses a substantial threat to all members of society." *United States v. O'Neal*, 937 F.2d 1369, 1375 (9th Cir.1990); *Phillips*, 732 F.Supp. at 263 ("Congress prohibited the possession of firearms by felons because it believed that possession of a firearm is particularly dangerous when it is by a convicted felon"). The passage of the Bail Reform Act likewise indicates Congress's belief in this regard. Congress sought to "address the alarming problem of crimes committed by persons on release ..." S.Rep. No. 98–225, at 5 (1984), *reprinted in 1984* U.S.C.C.A.N. 3182, 3187. Congress also found that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition [sic] of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." *Id.* at 6–7, *reprinted in 1984* U.S.C.C.A.N. 3189. Congress "concluded that pretrial detention is a necessary and constitutional mechanism for incapacitating, pending trial, a reasonably identifiable group of defendants who would pose a serious risk to the safety of others if released." *Id.* at 10, *reprinted in 1984* U.S.C.C.A.N. 3192–93. *See also United States v. Orta*, 760 F.2d 887, 890 (8th Cir.1985) ("The Bail Reform Act of 1984 ... was a legislative response to growing public concern over increased crime and the perceived connection between crime and defendants released on bail"); *Johnson*, 704 F.Supp. at 1400 ("Congressional intent to expand the 'crime of violence' concept ... is clearly evident in the legislative history").

It is certainly reasonable to conclude that a felon who is unlawfully possessing a firearm

poses a significant risk to others in the community. For one thing, felons will generally have been made aware by the courts, parole officers and others that it is unlawful for them to possess firearms. "Thus, when a felon chooses to possess a firearm, it must be presumed he does so in conscious disregard of the law." *Washington,* 907 F.Supp. at 485; *see also Jones,* 651 F.Supp. at 1310 ("the court assumes that most convicted felons are aware of the law forbidding them from possessing firearms").[1] There is accordingly good reason to fear that such a person would be likely to disregard laws prohibiting crimes of violence as well.

It is equally reasonable to infer that a person who has been convicted of a felony, yet is in unlawful possession of a firearm, is more likely to use that firearm in the course of committing a crime. The combination of the fact that the person has committed a felony in the past, and that he is knowingly violating the law by possessing a firearm, is some indication that the person is criminally inclined. The logical inference to draw from his possession of a firearm, then, is that he contemplates using it at some point. *Washington,* 907 F.Supp. at 485 (contemplation of use implicit in felon's possession of firearm makes § 922(g)(1) violation a crime that by its nature presents substantial risk that physical force may be used); *Sloan,* 820 F.Supp. at 1138–39 (felon who unlawfully possesses firearm commits a continuing threatening act against society); *Aiken,* 775 F.Supp. at 856–57 (there is an increased risk that a criminally-inclined person will be more likely to use a firearm already in his possession to commit another crime); *Phillips,* 732 F.Supp. at 263 (felon's willful disregard of his prohibition of possession of firearm "makes it more likely that he will commit another crime, and that he will do so with a firearm in his possession").

Many of the courts that have held that a § 922(g)(1) violation is not a crime of violence for purposes of the Bail Reform Act have relied upon cases construing the term "crime of violence," or similar terms, for purposes of statutes relating to sentencing, or the United States Sentencing Guidelines. For example, the court in *Gloster* cited the First Circuit's decision in *United States v. Doe,* 960 F.2d 221 (1st Cir.1992). In *Doe,* the court held that a § 922(g)(1) violation is not a "violent felony" for purposes of 18 U.S.C. § 924(e), which imposes an enhanced sentence for violent felonies. The First Circuit relied in part on a commentary by the United States Sentencing Commission that the term "crime of violence" in U.S.S.G. § 4B1.1 (which relates to whether a defendant is a "career offender") does not include the offense of unlawful possession of a firearm by a felon. U.S.S.G. § 4B1.2 Application Note 2. *See also Whitford,* 1992 WL 188815 *3–4 (citing *Doe* ).

As other courts have pointed out, however, there are significant differences between the factors that a court must consider with respect to pretrial release and those that relate to sentencing. At the pretrial release or detention stage, the potential risk posed to the community is greater and more immediate, for the issue at that point is whether to release the defendant into the community, not simply whether to extend the length of the sentence that he is about to serve. Moreover, whereas at sentencing the court has before it a full record concerning the offense and the defendant, including a detailed presentence report, a court considering whether to detain a defendant before trial must do so based on a record that is incomplete and uncertain regarding the relevant facts. This combination of greater risk to the community and less information before the court suggests that in the pretrial detention context, the term "crime of violence" should have a broader scope than it does with respect to sentencing issues. *Sloan,* 820 F.Supp. at 1139; *see also Washington,* 907 F.Supp. at 485 ("this Court is not convinced that the recommendations of the Sentencing Commission, notwithstanding its

---

1. I recognize that the Sixth Circuit's decision in *Hardon,* though it cannot be cited except in the limited circumstances set forth in Sixth Circuit Rule 24(c), nonetheless casts doubt on the continued validity within that circuit of *Jones* and the other previously-cited district court cases from the Sixth Circuit. Since *Hardon* would not be binding on this court even if it were a reported decision, however, there is no reason not to consider the reasoning of those district court decisions.

binding force in the sentencing context, should ever be extended beyond that realm").

In addition, some of the cases dealing with § 922(g)(1) offenses in the context of sentencing have looked to the specific facts surrounding the offense, an approach that is not appropriate here. For instance, in *United States v. Chapple*, 942 F.2d 439, 440 (7th Cir.1991), the court held that "the mere possession of a firearm does not constitute the crime of violence needed under the Sentencing Guidelines to designate him a career offender." In reaching that conclusion, however, the court relied heavily on the facts of the case, noting that there was no evidence that the defendant had displayed, touched, gestured toward or referred to his gun. *Id.* at 442. For the reasons already stated, such a fact-specific approach should not be used when determining whether to hold a detention hearing pursuant to § 3142(f). *See Aiken*, 775 F.Supp. at 857.

For all these reasons, then, I conclude that possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1) constitutes a "crime of violence" as that term is defined in 18 U.S.C. § 3156(a)(4)(B). Accordingly, the court must hold a detention hearing pursuant to 18 U.S.C. § 3142(f)(1).

**B. Detention for Crime of Violence**

Having determined that the Government properly moved for detention because § 922(g)(1) constitutes a crime of violence, I must next determine whether detention is warranted in this particular case. That, of course, requires me to consider all the factors in 18 U.S.C. § 3142(g), to determine whether there are conditions of release that would reasonably assure the appearance of the defendant and the safety of another person or the community.

■ The burden of proof is on the Government to prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will reasonably assure the presence of the defendant at trial

if he is released. *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir.), *cert. denied*, 484 U.S. 840, 108 S.Ct. 128, 98 L.Ed.2d 85 (1987); *Carter*, 996 F.Supp. at 265. The Government has the burden of proving by clear and convincing evidence that the defendant poses a danger to the community. *United States v. Chimurenga*, 760 F.2d 400, 405–06 (2d Cir. 1985); *United States v. Santillana*, No. 97 CR 108, 1997 WL 394663 *2 (N.D.N.Y. July 10, 1997).[2]

■ I have considered all of the factors under § 3142(g) and I conclude, as I stated orally in open court, that there are no conditions that would reasonably assure the safety of the community and another person. The crime charged in this case is serious. It involves a charge that a convicted felon possessed and sold four semi-automatic guns in August of 1998, for the sum of $2,000. I specifically find that defendant's sale of four semi-automatic weapons on a street corner in the City of Rochester poses a significant danger to the community. The clandestine sale of such weapons by an unlicensed, convicted felon to another who also could have been a felon intent on criminal activity poses a significant danger.

Campbell has an extensive prior record with nine convictions including three felony convictions over the past decade. The most recent conviction occurred in June 1998, a mere two months prior to the criminal activity charged in this case. Three of defendant's prior felony convictions involve narcotics convictions, and the arrests in those cases occurred in 1991, 1993 and 1997. That fact in itself indicates a high level of dangerousness to the community.

Campbell was placed on probation in several cases and his record of compliance is remarkably poor. Virtually every time he was placed on probation he was violated for failure to comply with the conditions of probation. Violations were filed in four separate cases, including the June 1998 sentence for which Campbell was just recently placed on

---

**2.** In my oral discussion with counsel at the detention hearing, I may have inadvertently indicated, as did counsel, that the burden in this case was by a preponderance. That standard, of course, does apply when the matter at issue relates to risk of flight. The Government's burden is more onerous, however, when the basis for detention is danger to the community and that is the standard to which I have held the Government.

probation. Campbell's serious prior record, his significant record for drug offenses and his consistent failure to abide by the terms of probation, convince me that Campbell is a danger to the community and should be detained.

In addition, Campbell has been convicted of several assaultive crimes. In August of 1990, he was arrested and charged with aggravated battery on a police officer. He did plead guilty to a lesser charge of battery, but it still involves assaultive conduct. In June of 1988, the defendant was also charged with assault but was allowed to plead guilty to a harassment charge and received a jail term.

Furthermore, defendant has an assaultive charge pending now in Rochester City Court. He was given an appearance ticket on October 16, 1998, and according to the police reports of that incident, defendant threatened the female complainant, sat on her vehicle, spit into the window of the vehicle and threatened her with a brick if she did not leave the area. Although the charge is still pending, the Court. has reviewed the police reports in the matter (which reports were shared with defense counsel), and I find them to be sufficiently reliable to consider on this motion for detention.

In addition, I believe the evidence against Mr. Campbell on the pending federal charges are quite strong. The proffer by the Government is that the gun sale was a hand-to-hand transaction and that there was surveillance by police officers and that some of the proceedings may indeed have been video taped.

Based on the above, the Government has met its burden by clear and convincing evidence that there is no set of conditions that will reasonably assure the safety of another person or the community and, therefore, the defendant is ordered detained.

**C. Detention Based on Risk of Flight**

█ As an alternative ground for detention, I believe that the Government has established by a preponderance that there are no conditions or combination of conditions that will reasonably assure the appearance of the defendant.

First of all, I note that the defendant now has three separate charges pending against him. First, of course, are the serious federal charges pending before me which contain substantial penalties. In addition, the Court was advised that a detainer has been lodged from Monroe County Court for a violation of the five-year probationary term imposed on defendant in June of 1998. There is certainly a realistic possibility that this arrest could trigger a violation of defendant's probation in state court which could result in an additional term of incarceration. And, as noted above, defendant has a pending charge in Rochester City Court for the spitting episode that occurred on or about August 13, 1998. The combination of all these charges certainly creates a risk of flight since defendant is facing multiple charges with the potential for significant punishment.

Furthermore, as the Court has noted, the defendant has shown a remarkable penchant for violating orders of the Court. Specifically, almost every time he has been placed on probation there has been a violation of probation which resulted in such a finding, usually with additional jail time or other punishment. If defendant is willing to violate these orders, there is certainly ample ground to believe he would be quite willing to ignore release orders as well. It is a fact that defendant was placed on probation in June 1998, and within two months was charged not only with this federal offense but also with the spitting incident in the City of Rochester. Furthermore, defendant's prior record shows that there were several instances when the defendant failed to appear or when bench warrants were issued for his appearance. Defendant also has an admitted chemical dependency problem, which further underscores his lack of stability in this matter.

So, for all of these reasons, and the reasons I stated on the record at the conclusion of the detention hearing, I find that the Government has proven by a preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure the presence of the defendant for trial. Therefore, the defendant is ordered detained on this ground as well.

## CONCLUSION

For the reasons stated, it is hereby

ORDERED that defendant is to be detained pending trial. It is further

ORDERED that defendant is to be committed to the custody of the Attorney General or her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.