Harry K. COOK, Petitioner-Appellant,

v.

Ron RILEY, Warden, Respondent-Appellee.

No. 98-6273.

United States Court of Appeals,

Eleventh Circuit.

April 14, 2000.

Appeal from the United States District Court for the Northern District of Alabama. (No. 97-01087-CV-AR-E), William M. Acker, Jr., Judge.

Before CARNES, BARKETT and MARCUS, Circuit Judges.

CARNES, Circuit Judge:

Section 3621(e)(2)(B) of Title 18 provides that the Bureau of Prisons ("BOP") may reduce by as much as one year the length of a prisoner's sentence for successful completion of a residential substance abuse treatment program. The statute limits the BOP's authority to do that to cases involving prisoners convicted of a "nonviolent offense." Through a regulation and program statement, the BOP has interpreted "nonviolent offense" as used in that statute to exclude the 18 U.S.C. § 922(g) crime of being a felon in possession of a firearm.

The issue in this appeal is whether the BOP's regulation and program statement classifying the § 922(g) crime as outside the scope of "nonviolent offense" as that term is used in § 3621(e)(2)(B) is a permissible exercise of administrative discretion, and if so, whether it is constitutionally permissible. For the reasons that follow, we answer both questions in the affirmative.

## I. PROCEDURAL BACKGROUND

Harry K. Cook pleaded guilty to the charge of possession of a firearm by a felon, and he was sentenced to 46 months imprisonment to be followed by 3 years of supervised release. While serving his sentence at the Federal Prison Camp in Talladega, Alabama, Cook completed a 500-hour "Comprehensive Drug Abuse Treatment Program" and applied for a sentence reduction under 18 U.S.C. § 3621(e)(2)(B). The

BOP refused to consider reducing his sentence, because under its applicable regulation and program statement, Cook's § 922(g) conviction rendered him ineligible for such a reduction.[1]

Cook then filed a 28 U.S.C. § 2241 habeas corpus petition in district court.[2] He contended that the BOP had impermissibly interpreted "nonviolent offense" to exclude the crime of possession of a firearm by a felon. Cook also contended that the BOP's refusal to consider him for a sentence reduction based on his conviction for the § 922(g) offense violated the Due Process and Equal Protection Clauses of the United States Constitution. The district court denied his habeas petition, and Cook appealed.[3] We review *de novo* the district court's denial of Cook's habeas petition. *See Chateloin v. Singletary,* 89 F.3d 749, 752 (11th Cir.1996).

## II. DISCUSSION

Section 3621(e)(2)(B) of Title 18 grants the BOP discretion to reduce by up to one year the sentence of a prisoner who successfully completes a substance abuse treatment program, but makes that reduction available only to "a prisoner convicted of a nonviolent offense." Because the statute does not define "nonviolent offense," it fell to the BOP to define that term in keeping with the statutory purposes.

The BOP's first step was Regulation 550.58, *see* 28 C.F.R. § 550.58 (1995), the applicable version of which was adopted in 1995.[4] That regulation defines "nonviolent offense" as the converse of "crime of

---

[1]Cook previously had been convicted of wire and mail fraud, but that previous conviction had no bearing on his eligibility for the § 3621(e)(2)(B) sentence reduction.

[2]In the habeas petition, J.L. Sivley, the warden of the federal correctional facility in which Cook was incarcerated, was named as respondent. Mr. Sivley is now deceased. The current warden, Ron Riley, has been substituted as respondent in this action.

[3]At oral argument, counsel indicated that Cook is presently in custody at the Federal Medical Center in Rochester, Minnesota.

[4]The relevant part of that regulation read as follows:

> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months ... unless the inmate's current offense is determined to be a crime of violence as defined in

2

violence," as that term is defined in 18 U.S.C. § 924(c)(3).[5] *See id.* In other words, the regulation says that whatever is not a "crime of violence" as that term is defined in § 924(c)(3) is a "nonviolent offense" under § 3621(e)(2)(B).

To insure that it would uniformly apply its regulation interpreting "nonviolent offense," as that term is used in § 3621(e)(2)(B), the BOP formalized an interpretation of the regulation itself in a program statement. *See Parsons v. Pitzer,* 149 F.3d 734, 737 (7th Cir.1998). In contrast to a substantive rule promulgated by an agency, a BOP program statement is "an interpretative statement of position circulated within [the] agency that serves to provide administrative guidance in applying a then existing published rule." *Pelissero v. Thompson,* 170 F.3d 442, 447 (4th Cir.1999). In July 1995, the BOP issued Program Statement 5162.02 ("P.S.5162.02"), which contained a comprehensive list of offenses that the BOP considered to be "crime[s] of violence" under Regulation 550.58 (1995).[6] *See* BOP Program Statement 5162.02 (July 24,

---

> 18 U.S.C. [§ ] 924(c)(3), or unless the inmate has a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault.

28 C.F.R. § 550.58 (1995). Although the regulation was amended in 1997, that amendment is inapplicable to this case. *See* n. 6, *infra.*

[5]Section 924(c)(3) defines a "crime of violence" as an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3). Section 924(c)(3) defines "crime of violence" for purposes of § 924(c)(1), which establishes mandatory minimum sentences for:

> "any person who, during and in relation to any *crime of violence* or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."

18 U.S.C. § 924(c)(1) (emphasis added).

[6]P.S. 5162.02 was amended in April 1996, *see* BOP Change Notice-01 (April 23, 1996), but the amendments do not affect the present case. Also, in October 1997, the BOP amended Regulation 550.58,

1995). In other words, the BOP interpreted (in the program statement) its own interpretation (in the regulation) of the statute. One offense listed in Section 7 of P.S. 5162.02 as a "crime of violence" *per se* is 18 U.S.C. § 922(g)—possession of a firearm by a felon. *See id.* 5162.02(7) (section titled "Criminal Offenses That Are Crimes Of Violence In All Cases").

*A.      Validity of the BOP's Interpretation of "Nonviolent Offense"*

Cook contends that classifying a § 922(g) offense as a "crime of violence"—which prevents that offense from being a "nonviolent offense" and excludes those convicted of it from consideration of a sentence reduction—conflicts with the plain language of § 924(c)(3), and thus, also conflicts with the plain language of § 3621(e)(2)(B). He further maintains the BOP's categorical treatment of § 922(g) as a "crime of violence" is inconsistent with judicial treatment of that offense, and more particularly, is inconsistent with the law of this Circuit. *See United States v. Flennory,* 145 F.3d 1264, 1268 (11th Cir.1998) (stating that possession of a firearm by a felon is not a "crime of violence" as defined in § 924(c)(3) for purposes of the mandatory minimum sentences in § 924(c)(1)) (citing *United States v. Canon,* 993 F.2d 1439, 1441 (9th Cir.1993)); *cf. United States v. Oliver,* 20 F.3d 415, 418 (11th Cir.1994) (holding that possession of a firearm by a felon is not a "violent felony" as defined in § 924(e) and cannot be used to enhance the sentence of a defendant as an armed career criminal under U.S.S.G. § 4B1.4).

We begin our discussion of these contentions with an explanation of why our prior case law interpreting "crime of violence" under § 924(c)(3) is not dispositive of the present issue. In *United States v. Flennory,* this Court stated in passing that § 922(g) was not a "crime of violence" as defined in § 924(c)(3). *See Flennory,* 145 F.3d at 1268. However, in that decision we were interpreting "crime of violence" with

removing the reference to § 924(c)(3). *See* 28 C.F.R. § 550.58 (1998). The amended Regulation 550.58 incorporates the view of P.S. 5162.02(7) and specifically excludes from consideration for a § 3621(e)(2)(B) sentence reduction any prisoner "whose current offense is a felony ... [that] involved the ... possession ... of a firearm or other dangerous weapon...." *Id.* § 550.58. The amended regulation was intended to apply to prisoners entering substance abuse treatment programs after October 9, 1997. *See Pelissero,* 170 F.3d at 445 (citations omitted). It is unclear from the record when Cook entered the drug treatment program, but he completed it in December 1996, well before October 9, 1997. Therefore, the 1995 versions of Regulation 550.58 and P.S. 5162.02(7) apply to Cook, and the amended regulation is not at issue in this case.

respect to § 924(c)(1), which, among other things, "imposes a mandatory five-year sentence for using or carrying a firearm 'in relation to any crime of violence or drug trafficking crime.' " *Id.* at 1267 (quoting 18 U.S.C. § 924(c)(1)) (emphasis omitted). Congress did not merely use the term "crime of violence" in the statute, but also provided a definition for the term as used in that statute. *See* 18 U.S.C. § 924(c)(3). Some interpretation of the defined term was still required, though, and in interpreting § 924(c)(3) in *Flennory,* this Court was engaging in the routine judicial task of interpreting statutes that apply to one of the traditional judicial functions, sentencing in criminal cases. By contrast, § 3621(e)(2)(B) involves the traditional executive function of commuting a sentence that is already being served, and the statute entrusts that function to the BOP, not to the courts. Thus, under § 3621(e)(2)(B) the courts have a different, and more limited, role in regard to the interpretation and application of statutory terms than they do under § 924(c)(1).

The absence of a statutory definition of "nonviolent offense" in § 3621(e)(2)(B) indicates that Congress "intended the BOP to determine those offenses that qualify as nonviolent offenses and those offenses to be excluded." *Parsons,* 149 F.3d at 737; *see also* H.R.Rep. No. 103-320, 103rd Cong., 1st Sess. (1993) ("In effect, [§ 3621(e)(2)(B) ] authorizes the [BOP] to shorten by up to one year the prison term of a prisoner who has successfully completed a treatment program, *based on criteria to be established and uniformly applied by the [BOP].*")(emphasis added). Even if a prisoner is deemed statutorily eligible for the sentence reduction, the decision about whether to reduce his sentence remains solely within the discretion of the BOP. *See* 18 U.S.C. § 3621(e)(2)(B) (providing that the BOP "may" grant a sentence reduction to a prisoner who successfully completes a substance abuse treatment program). And that decision is not subject to judicial review. *See* 18 U.S.C. § 3625; *see also Ward v. Booker,* 202 F.3d 1249, 1254 n. 5 (10th Cir.2000); *Martin v. Gerlinski,* 133 F.3d 1076, 1079 (8th Cir.1998) (stating that "it is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions"). As the Fourth Circuit has explained, such expansive discretion under § 3621(e)(2)(B) is necessary to permit the BOP to balance the dual objectives expressed in the statute: encouraging prisoners to complete substance abuse

5

treatment programs and preventing the early release of potentially violent felons. *See Pelissero,* 170 F.3d at 447.

In determining which prisoners are potentially violent and therefore unsuitable for early release, the BOP looked to the definition of "crime of violence" in § 924(c)(3) to guide its discretion, but elected not to tie its hands with all of the interpretive case law that had arisen under that statute. The BOP was free to do that. After all, it could have simply parroted the language of § 924(c)(3) in Regulation 550.58 without specifically referring to the statute. The fact that the BOP used a shorthand reference to its chosen definitional standard for "nonviolent offense" does not mean it intended to bind itself to the past or future decisional law construing § 924(c)(3). So, while judicial decisions concluding that § 922(g) is not a "crime of violence" or "violent felony" under statutes other than § 3621(e)(2)(B) may offer guidance to the BOP, they do not compel it to reach the same conclusion when it is administering the sentence reduction incentive program provided by that statute. In administrative law terms, Congress intended the "gap" of what constitutes a "nonviolent offense" to be filled by the BOP, not by the courts. Courts have a role, to be sure, but it is a limited one.

When a "statute is silent or ambiguous with respect to the specific issue," as § 3621(e)(2)(B) is here, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). A permissible construction of a statute is a reasonable one, and an agency's interpretation of an unclear statute is reasonable so long as "it is not arbitrary, capricious, or clearly contrary to law." *U.S. Mosaic Tile Co. v. National Labor Relations Bd.,* 935 F.2d 1249, 1255 (11th Cir.1991) (citing *Chevron,* 467 U.S. at 842-45, 104 S.Ct. at 2781-83). The BOP's specific answer to the question of whether a § 922(g) crime is a "nonviolent offense" came in P.S. 5162.02(7), so the issue for us is the validity of that program statement.

We recognize that, as an internal BOP guideline, P.S. 5162.02(7) was not subjected to the heightened scrutiny of administrative rulemaking, and thus, may not be entitled to the "considerable"deference accorded under *Chevron* to agency regulations promulgated under the ambit of the Administrative Procedure Act, 5 U.S.C. § 551, *et seq.* Nevertheless, the Supreme Court has instructed us that a BOP program statement, "which is akin to an interpretive rule that do[es] not require notice and comment, is still entitled to some deference ... [so long as] it is a permissible construction of the statute." *Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 2027, 132 L.Ed.2d 46 (1995) (internal quotation marks and citations omitted).

The *Koray* Court did not explain the difference between "some deference" and "considerable deference," and we need not hazard a complete explanation here. We do think it obvious, however, that "some deference" means there are occasions in which we should uphold the interpretation contained in a BOP program statement, even though it is different from the one we would reach if we were deciding the matter *de novo.* If that were not true, "some deference" would be the same as "no deference," and that would render the Supreme Court's words in *Koray* meaningless. Giving the BOP's program statement implementing § 3621(e)(2)(B) deference is consistent with the overall statutory theme of granting the BOP substantial discretion to carry out the program.[7]

Granting "some deference" to the BOP, we think the ultimate inquiry is whether its interpretation of "nonviolent offense" as that term is used in connection with this statutory program is reasonable. *See Parsons,* 149 F.3d at 737 ("Congress vested the BOP with the discretion to adopt any *reasonable* definition of a 'nonviolent offense' as used in 18 U.S.C. § 3621(e)(2)(B)") (emphasis in original); *see also U.S. Mosaic Tile Co.,* 935 F.2d at 1255 n. 6 (noting that "the deference standards set forth in [*Chevron* ] are now applied to most agency actions"). In more specific language, the issue in this case is "whether 28 C.F.R. § 550.58

---

[7]Cook suggests that the rule of lenity applies to § 3621(e)(2)(B) and requires resolving any ambiguity in the meaning of "nonviolent offense" in favor of him. But § 3621(e)(2)(B) neither criminalizes conduct nor imposes punishment, and thus, the rule of lenity is inapplicable. *See United States v. Lazo-Ortiz,* 136 F.3d 1282, 1286 (11th Cir.1998) (noting that "[t]he 'rule of lenity' requires that actual ambiguities in *criminal* statutes, including sentencing provisions, be resolved in favor of criminal defendants") (emphasis added).

(1995), as applied through P.S. 5162.02, represents a reasonable implementation of [§ 3621(e)(2)(B) ]."

*Pelissero,* 170 F.3d at 446.[8]

In *United States v. Stinson,* 943 F.2d 1268 (11th Cir.1991), *vacated and remanded,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), this Court concluded that § 922(g) was inherently a "crime of violence" under a definition similar to that used by the BOP to define "nonviolent offense."[9] Significantly, the

---

[8]Unlike the BOP interpretation involved in *Byrd v. Hasty,* 142 F.3d 1395 (11th Cir.1998), P.S. 5162.02(7) does not conflict with the plain language of either § 924(c)(3) or § 3621(e)(2)(B). In *Byrd,* this Court addressed the validity of Section 9 of P.S. 5162.02, under which a prisoner convicted for drug offenses under 21 U.S.C. § 841 or § 846 was deemed convicted of a "crime of violence," and consequently, ineligible for a sentence reduction, if his sentence had been enhanced under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm. *See id.* at 1397. We concluded that P.S. 5162.02(9) was not a permissible exercise of the BOP's discretion. *See id.* at 1398. Noting that the plain language of § 3621(e)(2)(B) excluded from consideration for a sentence reduction only prisoners "convicted" of a violent offense, we found that P.S. 5162.02(9) conflicted with the plain language of the statute in that it rendered ineligible prisoners who had been convicted of certain nonviolent offenses, but who had received enhanced sentences for possession of a firearm. *See id.*

> *Byrd* therefore involved the first prong of *Chevron*—it was clear from the language of § 3621(e)(2)(B) that Congress intended the character of the offense of conviction, not that of the factors used for sentence enhancement, to determine which prisoners should be considered for early release. *See id.* In this case, however, Cook was convicted of violating § 922(g), an offense the BOP has determined not to be a "nonviolent offense" under § 3621(e)(2)(B). Because the congressional intent as to what constitutes a "nonviolent offense" is unclear, we move to the second prong of *Chevron* and address the reasonableness of the BOP's interpretation.

[9]The defendant in *Stinson* had been sentenced as a career offender under the Sentencing Guidelines based, in part, on the district court's determination that the defendant's instant offense of conviction for possession of a firearm by a felon constituted a "crime of violence" under U.S.S.G. § 4B1.2. *See Stinson,* 943 F.2d at 1269-70. Section 4B1.2 provided:

> The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year that—... is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a *serious potential risk of injury to another.*

U.S.S.G. § 4B1.2(1)(ii) (1989) (emphasis added). Application note 2(B) to § 4B1.2 provided further that an offense was a "crime of violence" where "the conduct set forth in the count of which the defendant was convicted involved use of explosives or, *by its nature,* presented a *serious potential risk of physical injury to another*." *Id.,* comment. n. 2 (1989) (emphasis added).

> In this case, the BOP defined "nonviolent offense" by referring to the § 924(c)(3) definition of "crime of violence." Section 924(c)(3) defines a "crime of violence" as a felony "that '*by its*

8

unanimous panel in *Stinson* relied on the reasoning of a district court opinion holding that § 922(g) was a "crime of violence" as defined in the Bail Reform Act—a definition substantively identical to that in § 924(c)(3)[10]—and explained:

> The [district] court in *Jones* offered four independent justifications for its conclusion that the [§ 922(g) ] offense of weapons possession by a felon "by its nature" involves a "substantial risk of physical force":  (1) felons are more likely to use firearms in an irresponsible manner;  (2) felons are acutely aware that such activity is illegal, making the act of weapons possession a knowing disregard for legal obligations imposed upon them;  (3) felons are more likely to commit crimes, enhancing the likelihood the weapon will be used in a violent manner;  and (4) illegal weapons possession is an ongoing offense that often is not ended voluntarily, but only through law enforcement intervention, thus "[t]he character of the crime cannot be measured solely as of the moment of discovery and arrest."

*Id.* at 1271-72 (citing and quoting in part *United States v. Jones,* 651 F.Supp.1309, 1310 (E.D.Mich.1987));

*see also Parsons,* 149 F.3d at 738 (concluding that "the substantial risk of danger and the inherently violent nature of firearms, particularly firearms in the possession of a convicted felon" supports the BOP's refusal to consider sentence reductions for prisoners convicted under § 922(g)). Numerous district courts in addition to the *Jones* court likewise have concluded that § 922(g) is categorically a "crime of violence" as defined in the Bail Reform Act. *See United States v. Campbell,* 28 F.Supp.2d 805, 807-08 (W.D.N.Y.1998) (listing cases).[11]

_____

*nature,* involves a *substantial risk that physical force against the person* or property *of another may be used* in the course of committing the offense'."  18 U.S.C. § 924(c)(3)(B) (emphasis added).

[10]The Bail Reform Act defines "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 3156(a)(4)(B).

[11]Cook maintains that the commission of a § 922(g) offense is complete once the felon possesses the firearm, and as a result, there is no inherent risk that a § 922(g) offense will result in violence "in the course of committing the offense."  18 U.S.C. § 924(c)(3).  He thus contends the BOP's categorical inclusion of § 922(g) as a "crime of violence" conflicts with the plain language of § 924(c)(3).  However, as the district court in *Jones* explained, possession of a firearm by a felon may reasonably be viewed as an "ongoing offense" that terminates only upon the intervening act of law enforcement officials.  *See Stinson,* 943 F.2d at 1272 (quoting *Jones,* 651 F.Supp. at 1310).  For that reason, the BOP interpretation of "crime of violence" to include § 922(g) does not conflict with the plain language of § 924(c)(3).

9

In sum, the BOP decided that § 922(g) should not be considered a "nonviolent offense" under § 3621(e)(2)(B), because the BOP determined that offense to be a "crime of violence" as defined in § 924(c)(3). Several district courts and a panel of this Court have interpreted virtually identical definitions of "crime of violence" as applying to § 922(g).[12]  While the opinions of those district courts and that panel of this Court do not conclusively establish that the BOP's interpretation of "crime of violence," and conversely "nonviolent offense," is ultimately correct, we think they do conclusively establish that the BOP's interpretation is reasonable.  Nothing more is required.  While there are other plausible interpretations of § 924(c)(3), and conversely, of § 3621(e)(2)(B), "it would be too much to say that the statute 'cannot bear the interpretation adopted by' the [BOP]." *Koray,* 515 U.S. at 62, 115 S.Ct. at 2027 (citation omitted).

For these reasons, we agree with the three other circuits which have concluded that the 1995 versions of Regulation 550.58 and P.S. 5162.02(7) constitute a reasonable implementation of § 3621(e)(2)(B). *See Pelissero,* 170 F.3d at 447-48 (4th Cir.) (upholding Regulation 550.58 and P.S. 5162.02(7) as a reasonable

---

[12]After the initial *Stinson* decision, the Sentencing Commission amended the commentary to U.S.S.G. § 4B1.2 to state explicitly that § 922(g) was not a "crime of violence" for purposes of sentencing as a career offender. *See United States v. Stinson,* 957 F.2d 813, 814 (11th Cir.1992).  Stinson petitioned this Court for a rehearing based on that amended commentary, but the petition was denied. *See id.* at 815.  Concluding that the amended commentary was of "limited authority," this Court reaffirmed its "original interpretation of [§ ] 4B1.2:  that possession of a firearm by a felon inherently constitutes a 'crime of violence.' " *Id.* The Supreme Court reversed, holding that the commentary to the Sentencing Guidelines is authoritative and binding unless it "violate[s] the Constitution or a federal statute ... [or] is plainly erroneous or inconsistent" with the Guidelines. *See Stinson v. United States,* 508 U.S. 36, 45, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (citation and quotation marks omitted).  The Supreme Court remanded the case to this Court to determine whether the amended commentary applied retroactively, *see id.* at 47-48, 113 S.Ct. at 1920, a question we answered in the affirmative. *See United States v. Stinson,* 30 F.3d 121, 122 (11th Cir.1994).

In reversing and remanding our original *Stinson* decision, the Supreme Court concluded only that we had failed to accord sufficient deference to the supervening Sentencing Guidelines commentary, not that its initial interpretation that "crime of violence" included § 922(g) offenses was erroneous.  Indeed, the Supreme Court specifically stated that "the exclusion of the felon-in-possession offense from the definition of 'crime of violence' *may not be compelled* by the [U.S.S.G. § 4B1.2] text." *Stinson,* 508 U.S. at 47, 113 S.Ct. at 1920 (emphasis added).  Thus, while the initial decision of the *Stinson* panel was vacated and therefore has no precedential value, the fact remains that three judges of this Court unanimously concluded that § 922(g) "inherently constitutes a 'crime of violence' " under a definition similar to the one interpreted by the BOP in this case. *Stinson,* 957 F.2d at 815.

implementation of the reduction in sentence provision of § 3621(e)(2)(B)); *Parsons,* 149 F.3d at 736-38 (7th Cir.) (same); *Venegas v. Henman,* 126 F.3d 760, 763-65 (5th Cir.1997) (same); *but see Davis v. Crabtree,* 109 F.3d 566, 568-70 (9th Cir.1997) (concluding that Regulation 550.58 and P.S. 5162.02(7) reached an impermissible interpretation of "nonviolent offense"); *Orr v. Hawk,* 156 F.3d 651, 654-56 (6th Cir.1998) (same conclusion, but as to the amended Regulation 550.58). The BOP did not exceed its statutory authority in refusing to consider Cook for a § 3621(e)(2)(B) sentence reduction based on the fact that he was serving a sentence for violating § 922(g).

B.      *Constitutional Claims*

Cook also contends that the BOP's refusal to consider him for a § 3621(e)(2)(B) reduction in sentence violates his rights to due process and equal protection under the Fifth Amendment of the United States Constitution. He is wrong about that, too.

In order to establish a violation of the Due Process Clause, a petitioner must have been deprived of a liberty or property interest protected under the Fifth Amendment. *See American Mfrs. Ins. Co. v. Sullivan,* 526 U.S. 40, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999). A prisoner has "no constitutional or inherent right" in being released before the completion of a valid sentence. *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668 (1979). More particularly, if the relevant statute "places no substantive limitations on official discretion" in granting an early release from a valid sentence, no constitutionally protected liberty interest is implicated. *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); *see also Conlogue v. Shinbaum*, 949 F.2d 378, 380 (11th Cir.1991) (concluding no liberty interest arose from possibility of discretionary grant of incentive good time). Here, § 3621(e)(2)(B) provides only that the BOP "may" grant a reduction in sentence to a prisoner "convicted of a nonviolent offense." 18 U.S.C. § 3621(e)(2)(B). Because the § 3621(e)(2)(B) sentence reduction is left to the unfettered discretion of the BOP, the statute does not create a constitutionally protected liberty interest. *See Olim,* 461 U.S. at 249, 103 S.Ct. at 1747; *Venegas,* 126 F.3d at 765 ("The loss

11

of the mere opportunity to be considered for discretionary early release [under § 3621(e)(2)(B) ] is too speculative to constitute a deprivation of a constitutionally protected liberty interest."). It follows that the BOP's refusal to consider Cook for a reduction in sentence did not violate the Due Process Clause.

Neither did the BOP violate the Equal Protection Clause by excluding prisoners convicted under § 922(g) from consideration for a sentence reduction. Because the BOP's exclusion of § 922(g) offenders from consideration for a discretionary reduction in sentence does not impinge upon a fundamental right, *see Olim,* 461 U.S. at 249, 103 S.Ct. at 1747, nor isolate a suspect class, *see Wottlin v. Fleming,* 136 F.3d 1032, 1036 (5th Cir.1998) (explaining that classifying "inmates based on the type of criminal offenses for which they have been convicted does not implicate a suspect class"), it is subject to a rational basis review, *see Thornton v. Hunt,* 852 F.2d 526, 527 (11th Cir.1988).

Under a rational basis review, the BOP's interpretation of "nonviolent offense," embodied in Regulation 550.58 and P.S. 5162.02(7), would violate the Equal Protection Clause only if it is not rationally related to any legitimate governmental objective. *See Heller v. Doe by Doe,* 509 U.S. 312, 319-20, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). Because the BOP has reasonably determined that possession of a firearm by a felon constitutes a "crime of violence," its refusal to consider prisoners convicted under § 922(g) rationally furthers the legitimate governmental objective of preventing the early release of potentially violent criminals. *See Conlogue,* 949 F.2d at 380 ("Denying [incentive good time] to prisoners based on their criminal record is rationally related to the state's interest in preventing the early release of serious offenders."); *see also Wottlin,* 136 F.3d at 1037 ("By promulgating a reasonable categorical rule, the [BOP] ensures predictability and consistency in administration of the one-year sentence reduction program.") (quoting *Jacks v. Crabtree,* 114 F.3d 983, 986 (9th Cir.1997)). Therefore, the BOP's refusal to reduce Cook's sentence did not violate the Equal Protection Clause. *Cf. Wottlin,* 136 F.3d at 1034-37 (holding that Regulation 550.58 did not violate Due Process or Equal Protection Clauses by excluding from consideration for a sentence

12

reduction prisoners whose current offense of conviction may be nonviolent, but who had "a prior federal and/or state conviction for homicide, forcible rape, robbery, or aggravated assault").

### III. CONCLUSION

We hold that the 1995 version of Regulation 550.58, as applied through P.S. Statement 5162.02(7), which excluded from consideration for a § 3621(e)(2)(B) sentence reduction a prisoner serving a sentence for being a felon in possession of a firearm, in violation of § 922(g), constitutes a reasonable implementation of 18 U.S.C. § 3621(e)(2)(B). Furthermore, the BOP's refusal to consider reducing Cook's sentence did not violate either the Due Process or Equal Protection Clause. The district court's denial of Cook's habeas petition is affirmed.

AFFIRMED.